## THE LOUIE DOLE.

*(Circuit Court N. D. Illinois.  January 6, 1883.)*

1. SERVICES—APPLICATION OF PAYMENT.

    Where services were continuously performed on a vessel by libelant as engineer and wheelsman and pilot during a series of years, there is no distinction existing in the law of maritime liens as to such services; and the mode of appropriating payments from time to time made to libelant, in the absence of a special agreement, would be to the oldest service performed, and the balance claimed by libelant may be considered as accruing from the service most recently performed.

**2. SAME—LIEN NOT WAIVED.**

Where the owner had repeatedly promised to pay the claim, and he had gone into bankruptcy and libelant was informed that affected the validity of his claim, the fact that the bankrupt had scheduled the claim as a personal demand against himself could not prejudice the right of libelant to enforce his lien against the vessel, nor would the presentment of the claim by libelant to the bankrupt court be considered of itself a waiver of his lien.

**3. SAME—NOT WAIVED BY DELAY.**

Where the purchaser of a vessel had information sufficient before or at the time of his purchase, as in this case, to put him on inquiry as to any liens which might exist against the vessel, the fact that proceedings were not instituted against the vessel till after the purchase, would not operate as a waiver of the lien which originally existed.

In Admiralty.

*J. S. Reynolds* and *Magee & Adkinson,* for libelant.

*C. E. Kremer,* for defendants.

DRUMMOND, C. J.    The libel in this case was filed on the sixth day of May, 1878, against the steam tug-boat Louie Dole, to recover compensation for services rendered by the libelant on board of the tug from April 6 to July 4, 1876, as engineer; from July 21 to November 11, of the same year, as wheelsman and pilot; and also for services rendered in March, 1877, on board of the tug as engineer, in fitting her out.    On the seizure of the tug upon a monition issued, it was released, and a claim, as owners, was put in by Frederick Medynski and William G. Drinkwater.    A decree was given in favor of the libelant by the district court, but holding that the five-sixteenths of Drinkwater were not liable for the amount of the decree, from which one of the claimants, Medynski, has appealed.    The facts, as shown by the proof, seem to be substantially as follows:

At the time of the performance of the services mentioned, Jesse Cox was the managing owner of the tug, and a contract of service was made between him and the libelant, by which, for the first period named, the libelant, as engineer, was to have $110 a month; for the second period, as wheelsman and pilot, $145 a month; and for the last period $31.77; the whole balance claimed to be due, at the time the libel was filed, being $406.01.

It is not controverted that the services were performed by the libelant as stated, and the evidence clearly shows that the compensation named was agreed to.  ·In March, 1877, Medynski purchased five-sixteenths interest in the tug, and in April, 1878, the other eleven-sixteenths; the other claimant purchased the interest which he had from Medynski.   In July, 1876, a verbal agreement of charter was made between Cox and the libelant, and a man by the name of Kibbe, by which the libelant and Kibbe were to run the tug for five dollars a day, to be paid for her use. It was understood at the time a written contract or charter should be made, which, however, was never drawn up.   The contract seems not to have resulted very profitably for the parties, because

when it came to be terminated it was ascertained that there were several unpaid bills against the tug, and as a result of this it was agreed between the parties, and particularly between Cox and the libelant, that the contract of charter should be considered as abandoned, and that for the services rendered by the libelant during the running of the charter, which was only a few months, compensation should be given as wages, the libelant never having received any portion of the profits, if any were made, during the time of the charter.

The defendants claim, under this state of facts, that the action of the libelant was stale, because the libel was not filed until May, 1878, more than two years from the time that the service commenced; and because, for a portion of the time when the service was rendered, it was under the charter which has been already referred to; and it is claimed by the defendants that they had no notice of the account of the libelant against the vessel at the time they made the purchase, and that during all the time from the spring of 1876 until the spring of 1878, the tug was here in the port of Chicago, subject to seizure at any time, if a maritime lien existed against her on the part of the libelant. It is admitted by the defendants that there was a small balance due the libelant for the services performed in fitting out the tug in March, 1877, which, it is alleged, has been tendered to the libelant.

The evidence from the books of account, which were kept by Koehler, one of the witnesses, and in which the entries were made crediting libelant with the services performed, and with the money that was paid to him from time to time, does not appear to be in the record in this court, though referred to by some of the witnesses; but it is a fair inference, from the statements made by several of the witnesses, that the account was a continuous account. The libelant seems to have thought that there was a distinction in the kind of service that he performed, as constituting a lien against the tug, and that the service as engineer was superior to that which he rendered in other capacities; but under the circumstances of the case there does not seem to be any just distinction existing in the law as to the service performed; and the fair mode of appropriating the payments which were from time to time made to the libelant would be to the oldest service performed, unless there was an agreement between the parties as to the appropriation, which does not seem to have been the case. Then the balance which was claimed to be due by the libelant, in that view of the case, might be considered as accruing from the service most recently performed.

There can be no doubt but that in July, 1876, a contract of charter was duly made, although not in writing, between the managing owner and the libelant, and that the tug was run under that contract during a portion of the season of 1876; but it is equally certain, there having been no writing on the subject, that it was competent for the parties to treat this contract of charter as having been abandoned, and to replace or rehabilitate the libelant in the position which he occupied prior to the existence of the charter, provided the rights of third parties were not affected by the arrangement made. The evidence clearly shows that this was all done prior to any interest acquired by the defendants in the tug, and so they would have no right to complain of the arrangement, and I cannot doubt but that it was competent for the parties in interest, by mutual consent, to restore themselves to the position which they respectively occupied prior to the contract of charter.

There remains the question whether the claim of the libelant was so far stale as to prevent the lien from operating upon the tug. The libelant has stated the reason why the claim was not put in litigation sooner. It was because, as he alleges, Cox, the owner, had repeatedly promised to pay the claim, and because he had gone into bankruptcy; and the libelant was informed that that fact affected the validity of his claim. The bankrupt scheduled the claim as a personal demand against himself, which it no doubt was, as the owner and captain of the tug; but, clearly, that could not prejudice the right of the libelant to enforce his claim by any proper proceedings. It did not thereby waive his lien, if any existed, and the manner in which the libelant presented his claim to the bankrupt court could hardly be considered of itself a waiver of the lien.

Medynski admits that when he purchased five-sixteenths of the tug, in the spring of 1877, Cox told him that there were some bills against her, although there was enough due outstanding to pay all, but he denies that Cox mentioned that there was any bill due to Carter. There is a good deal of conflict in the evidence upon this subject, but the fair inference is that information sufficient was communicated to Medynski in the spring of 1877, before or at the time of his purchase, and certainly in the summer of that year, to put him upon full and rigid inquiry as to any liens which might exist against the tug. One of the witnesses refers to a conversation which took place between Carter and Medynski in the latter part of April, 1877, where Carter's claim was particularly referred to, and in

v.14,no.14—55

which Medynski assured him that he need have no anxiety about the payment of his claim. And Koehler states he told Medynski of Carter's claim before he purchased. But suppose there be a doubt upon this point, then would the fact that no proceedings were instituted by the libelant against the boat during the season of 1877, and not until May 8, 1878, waive or destroy the lien which originally existed? I do not think it would. In March, 1877, Medynski purchased five-sixteenths of the tug; he did not purchase the remaining eleven-sixteenths until April, 1878; and such delay as this has never been considered as depriving a person who had rendered service on board of a vessel of the lien which the maritime law gives him.

The decree of the district court will therefore be affirmed.