## THE GRAND REPUBLIC.

### (District Court, E. D. New York. June 6, 1905.)

1. MARITIME LIENS—REPAIRS—EVIDENCE OF AGREEMENT FOR LIEN.

While the fact that the charges for repairs to a vessel were made to the owner on the books, and that a bill was presented to the owner, is some evidence that the work was done on the credit of the owner, and not that of the vessel, it is not conclusive, and will not defeat the right of the repairer to a lien when an agreement therefor is shown.

[Ed. Note.—Liens for supplies and services, presumptions as to credit to vessel, The George Dumois, 15 C. C. A. 679.]

2. SAME—ESTOPPEL—SUIT AGAINST OWNER.

The repairer of a vessel is not estopped from claiming a lien by the fact that he first brought suit against the owner in personam to recover for such repairs.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens, § 78.]

In Admiralty. Suit to enforce lien for repairs.

James J. Macklin, for libelant.

Wingate & Cullen (T. Ellett Hodgskin and George Albert Wingate, of counsel), for claimant.

THOMAS, District Judge. The libel is filed to recover compensation for repairs to the Grand Republic. She is owned by a New York corporation, and is registered at the port of New York. The repairs were done in New Jersey, and were specifically pointed out by the ship's captain, who was aboard. The agreement that the vessel should be sent to the libelant for repairs was made by Barnaby, the president of the owner, in the city of New York, who ordered the vessel to go to the dock in New Jersey for that purpose. The books show that the repairs were debited to the owners, and a statement thereof was rendered to the owners, although the final bill was rendered in the name of the vessel. An action in personam was brought against the owners for the repairs of this vessel, and also for the repairs on the General Slocum, owned by the same company. O'Neill, who solicited business for the libelant in the city of New York, had interviews with Barnaby, the president, and Atkinson, the secretary, of the owner, respecting these repairs, but an estimate of a certain part of the repairs was prepared and submitted by the president of the libelant. Barnaby testified that he had a conversation with O'Neill, pursuant to which the repairs were made, and that he said the work was to be done under the superintendence of Pease, the captain of the boat, and that his company would want time until the vessel "got into earnings," or "possibly to the end of the season," before making payment, and that O'Neill agreed to this. Atkinson, the secretary, says that Barnaby told O'Neill that the company must have time, so as to make payment from earnings. As to this, O'Neill states:

"Q. Tell us what happened after that? A. After that Mr. Atkinson introduced me to Mr. Barnaby, and he said that he thought we had a good reputation, and it was his idea to send the boats over there and have them put in

first-class condition, and that he thought the reputation we had there wouldn't be any doubt about the bills, and I assured him that was the case. Q. Was there anything said about waiting until the end of the season? A. He said, 'How about payment?' I said, 'As matter of fact, we do not push people.' And he said, 'What is your terms?' I said, 'We like to have payments after thirty days.' He said, 'The boats don't go in commission; might not go in immediately.' I said, 'When can you pay?' He said, 'Just as soon as they begin to run.' Q. Anything else said? A. That is all. Q. Did he say they were not in a position to pay when the repairs were completed—did Mr. Barnaby? Tell what was said in regard to payment? A. That is about all I said to him— 'Of course, we don't look to any company for payment of bills. We always hold the boats.' Q. What did he say to that? A. He said he understood that."

Atkinson said he did not hear the statement as to holding the boats. Barnaby does not specifically deny it, but does not include it in his narration of the conversation with O'Neill. It seems to have been the practice of the owner to pay bills from the future earnings of the vessels, and all the bills of the previous season had not been discharged at the time this contract was made. The boats of the company were heavily mortgaged, and the company was otherwise in debt, and probably unable to meet its obligations. It had a small amount of money in bank. The libelant's president testified that he did the work on the credit of the vessel, and it does seem that so large a credit would not have been given to a foreign corporation that announced that it relied on future earnings to meet the cost of repairs. In any case the evidence of O'Neill outweighs the negative evidence of Barnaby and Atkinson, and it is not to be inferred that, having made a contract for the security of the vessel, the libelant failed to rely upon it. The manner in which the books are kept is some evidence whether the person performing the services relied on the credit of the ship, but it is not conclusive. It is a matter of bookkeeping, and naturally the account is kept with the owner, and in the usual course of business the statement would be sent to the owner. When the repairer makes the charge to the owner on his books, and asks the owner to pay, he fails to interpret with technical accuracy the agreement for a lien. But however the account is kept or the statement rendered, undue significance should not be attached to the mere form of the charge and the bills. The action in personam does not estop the libelant from his present remedy. The previous libel states that the repairs were made at the request of the owner, and so they were, but this is not inconsistent with a pledge of the vessel. The earlier suit illustrates that the libelant conceived that he had a cause of action in personam. His attempted assertion of such alleged right is not a concession that he had no lien.

The libelant should have a decree.