### THE NO. 14.

(District Court, E. D. New York. February 15, 1921.)

**Maritime liens ⬨═⪧28—Repairs made on order of owner.**

 A repairer of a scow on order of a charterer, under a charter requiring return of the boat in good order and condition, ordinary wear and tear excepted, who by direction of a representative of the owner made additional repairs to parts injured or worn through ordinary wear and tear, and which were not within his contract with the charterer, *held* entitled to a lien therefor, under Act June 23, 1910 (Comp. St. §§ 7783–7787).

In Admiralty. Suit by Frank McWilliams, Incorporated, against the mud scow No. 14. Decree for libelant.

Macklin, Brown, Purdy & Van Wyck and William F. Purdy, all of New York City, for libelant.

Carter & Carter and Peter Carter, all of New York City, for claimant.

⬨═⪧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge. The libelant undertook repairs upon the scow 14 for the charterer, the Great Lakes Dredging Company. These repairs necessitated putting the scow in dry dock in order to reset the corner irons and do certain work in connection with the doors to the pockets. The Great Lakes Dredging Company had the boat on the usual charter, requiring them to return it in good order and condition, ordinary wear and tear excepted. The repairs to be made were the results of injuries admittedly outside of ordinary wear and tear.

According to the testimony the libelant and the charterer went over the boat, specifying exactly those repairs which the charterer wished to have made upon the boat. During the course of the repairs the claimant sent his representative or runner to inspect the work, as apparently was customary on his part. According to the witnesses, the claimant, in his dealings with those who charter his boats, is not only exact and careful in requiring the making of repairs, but is insistent upon having the repairs made in workmanlike and permanent fashion, rather than to be content with temporary patching.

The libelant knew that the boat was under charter. The foreman of the libelant testified that the claimant was present at the interview when the items of repairs were agreed upon. But this is contradicted by the claimant, and it is impossible to find that the claimant was present. The libelant, as the work progressed, made additional repairs, admitted by all the witnesses to be within the clause "ordinary wear and tear," to some of the appliances and fittings of the pockets, and in the books of the libelant separate accounts of material and labor were kept for the work which had been ordered by the charterer, as distinguished from the work which came under ordinary wear and tear.

The superintendent of the libelant testifies specifically that the runner of the claimant ordered this "ordinary wear and tear" work to be done. The libelant, at the termination of the work sent two bills, each charged against the scow and the Great Lakes Dredging Company, the charterer, one bill for the work done under the contract with the charterer, and the other bill for the ordinary "wear and tear" repairs.

The representative of the Great Lakes Dredging Company objected to the bill for "wear and tear," and, as is shown by one of the exhibits, in August returned the bill to the libelant, which then made the bill out to the scow and to the claimant, as owner, and sent the bill to the owner, who has refused to pay the same. The claimant's runner is no longer in his employ and no effort has been made by the claimant to locate his whereabouts, or to produce him in court.

The libelant claims that the "ordinary wear and tear" repairs were ordered by the owner's representative, and that they are thus brought within the statute of June 23, 1910. 36 Stat. 604 (Comp. St. §§ 7783–7787). No question is raised that they are within the general subject-matter of this statute, but the claimant contends that the libelant cannot claim a lien therefor, in view of the libelant's knowledge that the boat was under charter, that the contract for repairs was made with the charterer, and that the libelant had reason to believe, or to know, and at any rate could easily have found out, that he, the claimant, had not ordered the repairs in question, and would not be responsible therefor.

It appears from the record that the claimant had previously notified the libelant, in the case of another boat, that he would not be responsible for any of the work done at the charterer's direction. It is apparent that the libelant knew of the charter, and that it cannot avoid any consequences of such knowledge. It could have no lien for work done or necessaries furnished on the orders of the charterer which were excluded by the terms of the charter. Act June 23, 1910, c. 373, § 3; The Hatteras, 255 Fed. 518, 166 C. C. A. 586; The South Coast, 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386.

The libelant is not bound by the way in which the account was kept in its books, as the testimony shows that the bookkeepers, at the direction of the superintendent, kept the two jobs separate, and entered the name of the Great Lakes Dredging Company, as owner, without definite instructions, or without knowledge, as to any arrangement made for the making of the second repairs. In the same way the sending of a bill for the ordinary wear and tear repairs to the Great Lakes Dredging Company, of itself, is no proof that these repairs were not ordered by the claimant. But the testimony shows that the repairs for ordinary wear and tear were ordered by the representative of the owner, and, if so, the presumption arises that they were ordered on the credit of the vessel, and a lien was created, unless the presumption is rebutted. Act June 23, 1910, § 1.

The charterer was not bound to pay for them, and the owner would be liable in personam, if ordered by his representative, even though no lien existed; but that liability would be unenforceable in this suit.

On the testimony a valid lien is shown, and the libelant may have a decree.