## THE PORTLAND.

### NATIONAL SURETY CO. et al. v. UNION OIL CO. OF CALIFORNIA.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1921.)

No. 3608.

1. **Maritime liens �köö17—Statute of 1910 was intended to remove confusion.**
    The purpose of Act June 23, 1910, c. 373 (Comp. St. §§ 7783–7787), relating to liens on vessels for repairs, supplies, or other necessaries, was to give certainty, where uncertainty and conflict of decision had arisen as to the liability of a ship for services and supplies.

2. **Statutes �köö209—"Order" and "procure," in different sections of Lien Act have same meaning.**
    The fact that in Act June 23, 1910, c. 373, §§ 1, 3 (Comp. St. §§ 7783, 7785), the word "order," or "ordering," is used with reference to the supplies for which a maritime lien is given, while in section 2 (Comp. St. § 7784), specifying the persons presumed to have authority from the owner to bind the vessel, the word "procure" is used, does not indicate an intention to give different significance in those sections.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Order; Procure.]

3. **Maritime liens �köö21—Requirement that charterer shall pay for fuel does not deprive master of authority to bind vessel.**
    The requirement in a charter party that the charterer shall furnish and pay for the fuel regulates the rights between the owner and charterer, but does not affect the rights of third persons and does not deprive the master of the authority he is presumed to have under Act June 23, 1910, c. 373, § 2 (Comp. St. § 7784), to bind the vessel for fuel, so that a lien may be asserted for the fuel notwithstanding section 3 (Comp. St. § 7785), denying a lien if the furnisher knows that because of the terms of the charter party the master was without authority to bind the vessel for the fuel.

4. **Maritime liens ⊘ö28—Charter provision giving lien for advances does not deny authority of master to bind vessel for supplies.**
    A provision in a charter party giving the charterer a lien on the vessel for advances made, but not determined, does not impliedly deny the authority of the master to bind the vessel for fuel furnished to it, since it refers to a lien given by the owner to the charterer, and not one given by the charterer to third persons.

5. **Stipulations ⊘ö14(10)—Stipulation held to show fuel was supplied vessel on order of master and not under contract with charterer.**
    On a libel to enforce a lien for fuel against a vessel while she was under charter, a stipulation that the libelant furnished fuel oil on orders from

___

the master shows that it was procured by the master, who had authority to bind the vessel, and not furnished under an existing written contract between the charterers and the fuel company.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Libel by the Union Oil Company of California against the steamship Portland and another to enforce the maritime lien. Decree in favor of libelant, and claimant appeals. Affirmed.

Libel in rem to recover the value of fuel oil furnished by Union Oil Company to the steamship Portland on different occasions between July 5 and November 27, 1912. About April 18, 1911, the California-Atlantic Steamship Company contracted with the Union Oil Company of California that the Steamship Company would use oil in the steamers which the company might charter or operate in its California-Atlantic service and to purchase from libelant all oil required in the operation of any steamers chartered subsequent to April 18, 1911, not specifically mentioned in the contract. The Oil Company agreed to sell and deliver the oil. On August 28, 1911, the Steamship Company chartered the Portland, the charterers to pay for all fuel, except as specifically provided for. It is stipulated that libelant notified a representative of the Steamship Company that it would be necessary to charge any oil and dunnage furnished to the ships mentioned in the contract to the vessels, and that to this the representative of the Steamship Company consented. Bills for oil furnished between August 28, 1911, and July 5, 1912, were rendered to the Steamship Company, charging oil to the ship and to the charterer Oil Company, and such bills were paid by the California-Atlantic Steamship Company. But for five deliveries between July 5, 1912, and November 12, 1912, no payment was made, and libelant filed the present libel. From a decree in favor of libelant claimant appealed.

The claimant's position is that libelant has no lien upon the steamer, and that neither the steamer nor her owners are liable for the oil furnished; while libelant asserts that it has a lien under the provisions of the Act of Congress of June 23, 1910, c. 373 (36 U. S. St. L. 604 [Comp. St. §§ 7783–7787]), "relating to liens on vessels for repairs, supplies, or other necessaries." The act provides "that any person furnishing repairs, supplies, or other necessaries * * * to a vessel * * * upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien upon the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." Section 2 provides that among the persons who shall "be presumed to have authority from the owner or owners to procure repairs, supplies and other necessaries for the vessel," shall be "the managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is entrusted." Section 3 is as follows: "That the officers and agents of a vessel specified in section 2 shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel, but nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

Andros & Hengstler and Louis T. Hengstler, all of San Francisco, Cal., for appellants.

Farnham P. Griffiths and McCutchen, Willard, Mannon & Greene, all of San Francisco, Cal., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). [1] The purpose of the act of 1910 was to give certainty where uncertainty and conflict of decision had arisen upon the question of the liability of a ship for materials and service. In The Yankee, 233 Fed. 919, 147 C. C. A. 593, the Court of Appeals for the Third Circuit summarizes the contrariety of views and refers to the learned opinion of Judge Lowell in The Underwriter (D. C.) 119 Fed. 713, as demonstrating the confusion which through centuries has obscured the subject. This court, too, considered the state of the law in The South Coast, 247 Fed. 84, 159 C. C. A. 302.

The cases cited show how the courts differed in their construction, depending upon whether supplies were furnished in a foreign or domestic port, or were furnished upon the credit of the representative of the ship, or upon the credit of the ship, and whether they were furnished upon the order of the owner or the master. We shall not take up the discussion further than to say that Congress, presumably knowing of the confusion, endeavored by the act of 1910 to make the law more certain by providing in effect that proof that credit was given the ship is dispensed with in the first instance, in that a presumption shall obtain that certain persons have authority to procure supplies and that the ship's husband or master is one of the persons. No lien accrues if such persons did not have authority to bind the ship, and such lack of authority was known, or ought to have been known, to the furnisher of supplies. To apply the law to the circumstances of the present case is quite simple. The supplies were furnished at San Francisco, Oleum, and Balboa, upon the order of the master of the Portland. This being the case, the libelant established a prima facie right to a lien to be upheld, unless the claimant showed facts which withdrew the case from the general provisions by proving that the furnisher knew or by the exercise of reasonable diligence could have ascertained that because of the terms of the charter party, or for any other reason, the master was without authority to bind the ship.

[2] Appellant puts special stress upon the fact that there was a general contract between libelant and the charterer to buy fuel oil used by the charterer in operating its ships, and that the charterer therein agreed to provide and pay for the fuel oil used by the ship, and says that the oil was in fact "procured" by the charterer under a personal contract obligating libelant to furnish the same. It is to be noted that section 1 of the act uses the words "upon the order" of the owner, while section 2 declares what persons shall be presumed to have authority from the owner "to procure" supplies, and in section 3 we find the words "person ordering the repairs," etc. We cannot perceive, however, that the words "order" and "procure" were used with different significance. Fuel furnished by a person upon the order of the master is equivalent to fuel which the master has authority to procure. The first section confers the right of lien where the furnishing is done on

order; the second defines those who are presumed to have authority to obtain the fuel.

[3] It is said that the charter party gave the charterer no right to impose a lien on the vessel for fuel to be furnished for two reasons: One, because the charter obligation to provide fuel was on the charterer; another, because the only lien upon the ship given to the charterer by the charter party was a lien for moneys advanced and not earned. But an examination of the charter party fails to disclose that the master or charterer had not authority to bind the vessel for supplies of fuel at distant ports. There are no words prohibiting persons enumerated in section 2 of the act of Congress from binding the vessel for necessary things. We think that a charter party with a provision that charterer shall provide and pay for fuel oil does not take away from the master the authority conferred by the act upon the master to bind the ship. It regulates the rights as between owner and charterer; but as to third persons the right of lien is not affected. In The South Coast (D. C.) 233 Fed. 327, Judge Dooling very clearly enunciated that in a charter party requiring charterer to pay expenses incurred in operating as well as for supplies furnished the vessel, it is an essential precaution for the owners to provide by the terms of the charter that the charterer or the master appointed by him, should be without authority to bind the vessel therefor. This court affirmed that view in The South Coast, 247 Fed. 84, 159 C. C. A. 302, and the ruling was affirmed by the Supreme Court in The South Coast, 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386.

[4] Distinction between that case and this is said to exist because in The South Coast the charter party recognized that liens might be imposed by the charterer, whereas here there is no such recognition, but, on the contrary, there are provisions which negative the right of the charterer to impose a lien "for the purpose of procuring" fuel oil. Among the provisions of the charter party under consideration are: That charterer shall provide and pay for fuel; that charterer shall pay for use of vessel regardless of whether she moves or not or whether she is supplied with fuel or not; that charterer shall have a lien "on the ship for all moneys paid in advance and not earned." But the charter party in The South Coast required charterer to provide and pay for supplies as well as operating expenses of the vessel. Nor does the provision giving a lien on the ship for all moneys paid in advance and not earned affect the similarity of the cases, as the lien referred to in the case before us is one given by the owners to the charterers, not one given by the charterers to third persons.

The real ground for the ruling in The South Coast was that the supplies were furnished on orders from the master, and the master had the power to impose a lien unless the charter party excluded the possession of such power. Some of the cases cited by the appellant are to the effect that one knowing that he is dealing with a charterer is put on inquiry as to the terms of the charter party. The Oceana (D. C.) 233 Fed. 139; Id., 244 Fed. 80, 156 C. C. A. 508; The Castor, 267 Fed. 608. That rule can be accepted without disturbance of the authority of The

South Coast for holding that, libelant having delivered supplies upon the master's orders, and the master having been authorized to order supplies for the vessel, and there being no clause in the charter which in any way prohibited the master from exercising such authority, it has a lien which has not been defeated. In the case of The Millinocket (D. C.) 266 Fed. 392, cited by appellant, it is doubtful at least whether the coal was ordered by one presumed under the statute to have authority to bind the vessel. We gather that a subcharterer was the person who tried to pledge the ship, and it was properly held that no lien was presumed in favor of the libelant without proof of authority. In Curacao T. Co. v. Bjorge (C. C. A.) 263 Fed. 693, it was held the master did not order the coal, but acted for the charterers, and therefore there was no presumption of a lien.

[5] Claimant says that the stipulated facts are that the fuel oil was furnished at the prices and under the conditions specified in the oil contract, and that therefore the oil was furnished upon orders from the master, and that the master had nothing to do with getting it, except under charterer's direction, of which libelant knew. The position is not tenable. In the pleadings libelant alleged "that the fuel oil was furnished by order of the master and charterer of the vessel and was charged to said vessel by libelant." The answer denied that the fuel oil "was furnished by order of the master and charterer or by the master of said vessel." The stipulation is that from time to time "libelant furnished to the steamer Portland fuel oil in the amounts as follows upon orders from the master," etc. We gather neither directly nor by implication a meaning whereby the master became merely a person for the transmission of the order.

The decree is affirmed.