the enjoined must have actual notice of the injunction before he can be guilty of contempt. As the pleading on which the prosecution rested (counting the affidavits as parts thereof) failed to charge that McCauley had actual notice of the injunction when he made the alleged speeches, the demurrer should have been sustained.

[2] We note that the bank's pleading sought no civil remedy for itself through coercive punishment of the alleged contemnor, but, on the contrary, asked the court to vindicate its power and dignity as a branch of the government by assessing a definite punishment for criminal contempt. As soon as the trial court perceived the nature of the proceeding, the bank's pleading should have been dismissed as that of an incompetent party.

After McCauley's demurrer was overruled, he filed a verified answer in which he denied the charge of contempt and gave his version of the nature and purpose of his speeches. McCauley waived a jury, but he did not expressly waive a trial of the issues joined. Neither did he demand a trial,—meaning by that an opportunity to confront the prosecuting witnesses in open court and to cross-examine them and subsequently to introduce evidence in his defense. On the affidavits filed with the bank's barren motion, and on McCauley's answer as a counter affidavit, the court pronounced judgment. It may be said that McCauley waived his right to the trial he was entitled to demand. But the entry of the judgment on an examination of affidavits is such a serious departure from the due process guaranteed in criminal cases by the Constitution and the laws that we are reluctant to charge McCauley with an intent to waive a trial. But, as the judgment must be reversed on the grounds hereinabove stated, we pass the question of what effect should be given to McCauley's failure to object.

The judgment is reversed, with the direction to dismiss the proceeding.

---

### THE PENN.

(Circuit Court of Appeals, Third Circuit. November 2, 1921.)

No. 2709.

Maritime liens ⟨⊙⟩29—Furnisher of supplies on order of agent of charterer held entitled to lien.

A furnisher of supplies to a vessel on orders of the authorized local agent of the charterer, nothing appearing to give notice that because of the terms of the charter party he was without authority to bind the vessel, *held* entitled to a lien therefor under Act June 23, 1910, §§ 1–3 (Comp. St. §§ 7783–7785).

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in admiralty by the D. Pender Grocery Company against the steamer Penn. Decree for respondent, and libelant appeals. Reversed.

---

⟨⊙⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lewis, Adler & Laws and Otto Wolff, Jr., all of Philadelphia, Pa., for appellant.

John Cadwalader, Jr., of Philadelphia, for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge. The essential facts of this case are, with one exception, similar to the facts in The Lord Baltimore (C. C. A.) 273 Fed. 990. On these facts we found in both cases that the supplies furnished each vessel were "necessaries" in the maritime sense and would sustain a maritime lien, and that the Washington-Southern Navigation Company, Inc., assignee of the charterer, was the "person to whom the management of the vessel at the port of supply (had been) intrusted." Act of Congress of June 23, 1910, 36 Stat. c. 373 (Compiled Statutes. §§ 7783-7787).

The difference between the cases in point of fact is that in The Lord Baltimore the supplies were ordered at Norfolk, the port of supply, by the steward of the ship and were delivered upon the request of Charles H. St. Johns, Vice-President and General Manager of the Navigation Company, personally made to the libellant. In this case of The Penn the supplies were ordered by Roger A. Rhodes, agent for the Navigation Company at Norfolk. In each case there arose the question whether the supplies were ordered by a person in authority within the meaning of the Act. Having found in both cases that the Navigation Company, assignee of the charterer, was the corporate "person to whom the management of the vessel at the port of supply (had been) intrusted," and that, in consequence, it was the person "presumed (by the act) to have authority from the owner or owners to procure repairs, supplies, and other necessaries for the vessel," it became necessary to determine whether St. Johns and Rhodes—one or both—were such "officers and agents" of the intrusted person as could speak for it within the meaning of the Act. We found in The Lord Baltimore that St. Johns was an "officer" with such authority, and in The Penn—by what we regarded as a necessary exclusion—that Rhodes was not an "agent" with such authority. On rehearing we discover error in this finding. This error was based on the fallacy, in which we indulged, that if St. Johns had authority, Rhodes could not have authority. On careful reading, we find that the record discloses that St. Johns was not the representative of the Navigation Company resident at Norfolk but was the General Manager resident at Washington, whose orders for supplies bound his company without regard to the place in which they were given. It also appears that Rhodes was the sole representative of the Navigation Company resident at Norfolk: that he had his office on the Company's dock; that he ordered the supplies, checked their delivery and transmitted the bills to his principal at its home office in Washington. But for the previous transaction of St. Johns we would have had no doubt of Rhodes' authority to act for the Company. That transaction by St. Johns, under his authority of General Manager, we now find was not inconsistent with, but was independent of, the action of Rhodes under his authority as agent—each, in his respective position, having the requisite authority to speak

for his corporate principal. We also find, as in The Lord Baltimore, that there was nothing disclosed by the evidence to put the libellant on notice "that because of the terms of the charter party * * * the person ordering * * * supplies or other necessaries was without authority to bind the vessel." The Yankee, 233 Fed. 919, 147 C. C. A. 593; The Oceana, 244 Fed. 80, 156 C. C. A. 508.

It follows, therefore, that the decree below must be reversed.

---

### CAMOU v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1921. Rehearing Denied December 5, 1921.)

No. 3661.

Poisons ⊚⇒9—Conviction for violation of Harrison Narcotic Act held based on sufficient indictments and supported by evidence.

Conviction of a defendant for concealing smoking opium knowing that it had been imported in violation of law, and for having in his possession, with intent to sell the same, certain narcotic drugs without having registered and paid the special tax as required by Act Dec. 17, 1914, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), in violation of section 8 of said act (Comp. St. § 6287n), *held* based on sufficient indictments and supported by the evidence.

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Criminal prosecution by the United States against P. J. Camou. Judgment of conviction and defendant brings error. Affirmed.

Geo. D. Collins, Jr., of San Francisco, Cal., for plaintiff in error.

Frank M. Silva, U. S. Atty., and Wilford H. Tully, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. We have given to the record of the case attentive consideration, and find in it no ground whatever for the reversal of the judgment.

There were two indictments against the plaintiff in error, which, being of the same general nature, were by stipulation of the counsel in the court below consolidated for trial and were so brought and submitted here. One alleged that at a certain time and place within the jurisdiction of the trial court the defendant thereto unlawfully, willfully, and knowingly received, concealed, and facilitated the transportation and concealment after importation of certain specified opium prepared for smoking purposes, which he then and there well knew had been imported into the United States contrary to law.

The other indictment contained two counts, in the first of which it was alleged that the defendant at a certain time and place within the jurisdiction of the court did unlawfully, willfully, and knowingly vio-

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes