**ROTHSCHILD & CO., Inc., v. ROBIN LINE S. S. CO., Inc. (two cases). SAME v. SEAS SHIPPING CO., Inc. THE ROBIN GOODFELLOW. THE ROBIN GRAY. THE ROBIN HOOD.**

Circuit Court of Appeals, Ninth Circuit. May 14, 1928.

No. 5325.

**1. Shipping ⊚⟐39(2)—Typewritten clause, attached to charter parties, prevailed over conflicting printed clause in instruments.**

Where clause in printed form of charter parties and typewritten clause attached thereto conflicted, appended written clause prevailed.

**2. Shipping ⊚⟐50—Owners of vessels held not liable for stevedoring services rendered charterers under charter parties providing for employment of stevedore, in view of addenda requiring charterers to load and stow cargo at specified rate.**

Owners of ship held not liable to stevedoring company for stevedoring services rendered charterers under charter parties in which printed clause, providing for employment of stevedore by the steamer for loading and discharging, was modified by appended typewritten clause, by which charterers agreed to load and stow cargo for $1.70 per 1,000 board feet of lumber, and owner agreed to pay expenses in case owner elected to have steamer worked overtime, especially where stevedoring company originally looked to charterers, and not to owners of ship, for payment.

**3. Corporations ⊚⟐456—Corporation's employment of stevedoring company to load lumber on vessel held not ultra vires.**

Where articles of incorporation of corporation chartering ships defined its objects to be "to manufacture, purchase, acquire, buy, sell, deal, and traffic in lumber, * * * and to do all such things as are incidental and conducive to the attainment of the above objects," employment by corporation of stevedoring company for loading and stowing of cargoes of lumber on vessels chartered held not ultra vires of corporation.

Appeal from the District of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Consolidated suits by Rothschild & Co., Inc., against the Robin Line Steamship Company, Inc., as claimant of the steamship Robin Goodfellow, as claimant of the steamship Robin Gray, and against the Seas Shipping Company, Inc., as claimant of the steamship Robin Hood. From an adverse decree (20 F.[2d] 924), libelant appeals. Affirmed.

The appellant, a corporation engaged in stevedoring, brought three suits in rem and three suits in personam against three vessels and their respective owners to recover for stevedoring services rendered, it was alleged, at the special instance of said owners in loading and stowing cargoes of lumber at the rate of $1.50 per 1,000 board feet, and for moneys advanced to the master of one of the vessels for necessary disbursements. The causes were consolidated for trial, and upon the testimony taken upon the issues involved the court below ordered the libels dismissed, with costs. The vessels, at the time when the stevedoring services were rendered, were under two charter parties, one of August 22, 1925, and one of October 5, 1926, which were identical in terms. The owners placed at the disposal of the charterer, the Southern Alberta Lumber Company, for cargo, all superfluous space.

Printed clause 13 provided: "Steamer to pay all port charges, harbor dues, and other customary charges and expenses in loading and discharging cargo." Printed clause 15 provided: "Cargo to be stowed under the master's supervision and direction, and the stevedore to be employed by the steamer for loading and discharging, to be nominated by the charterers or their agents, at current rates. (See Addenda C.)"

Addenda C: "In connection with clause 15, charterers agree to load and stow the cargo for one dollar and seventy cents ($1.70) per thousand board feet or its equivalent, and agree there will be no extra charges during customary working hours, unless detention is caused by breakdown of machinery, winches, or other defects of the steamer. Charterers have the option of working overtime by pay-

ing all expenses in connection therewith; but, if owners elect to have steamer worked overtime, it is understood that this will be subject to charterers' approval, and all expenses in this case to be for owners' account."

William H. Gorham, of Seattle, Wash., for appellant.

Kerr, McCord & Ivey and J. N. Ivey, all of Seattle, Wash., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The court below held that decision depended upon the meaning of clause 15 and Addenda C, and that, if there was conflict between the two, the latter should control, for the reason that clause 15 was in a printed form of the charter parties, while Addenda C was a typewritten clause attached thereto, and that, inasmuch as the latter definitely fixed the rate for loading at $1.70 per 1,000 board feet, and the charterer agreed to load and stow the cargo, and the further provision was made that, if the owners should elect to have overtime work done, subject to the charterer's approval, the expense thereof should be for the owners' account, the appellant had no ground to recover for services rendered. There can be no question but that the trial court properly held that, in case of conflict between the printed clause and the written clause appended to the charter parties, the latter must prevail. In so holding the court followed a familiar rule of construction, which scarcely needs the citation of authority.

But the appellant points to the fact that added at the end of clause 15 are the words "(See Addenda C)," and that Addenda C begins with the words "In connection with clause 15," and contends that therefore the clause and the addenda must be construed together in an endeavor to harmonize any supposedly conflicting provisions found therein as would be done in case both clauses had been printed in the charter party, and that, when that is done, clause 15 is only modified by Addenda C to the extent of fixing the maximum rate per 1,000 feet board measure to be paid by the owners for loading and stowing cargo, and that the charterer, in hiring the appellant to perform the stevedoring service, was acting only as the appellee's agent.

The appellant contends further that the charterer had no corporate power to contract with the owners to load and stow cargoes for the consideration of $1.70 per 1,000 board feet, and that, if the charter parties are susceptible of two constructions, one that the charterer agreed to load and stow cargoes at the consideration named, and another that the cargoes were to be stowed under the master's supervision and direction, and the stevedore nominated by the charterer to be employed by the steamer for loading at the rate of $1.70 per 1,000 board feet, the former construction rendering the charter parties invalid, and the latter rendering them valid, the latter construction should be adopted.

[2] We do not think the agreement is susceptible of two constructions. We are unable to find in the words which connect clause 15 with the Addenda C any intention to supply a meaning to the provisions of the former, or that they had other purpose than to direct attention to the fact that the latter was modified by the former, and was intended to take its place in every particular in which there was conflict between the two. There is conflict in the fact that the addenda fixes the rate of loading and stowing at $1.70 per 1,000 board feet, and provides that the charterer "agrees to load and stow the cargo," and in the further provision that the charterer may work overtime by paying all expenses, and, if the ship desires to work overtime and the charterer consents, the expense thereof shall be paid by the ship. It thus fixes upon the ship the obligation of paying for the additional expense, if it desires to work overtime, and by implication it recognizes that the charterer is to pay all other expenses of loading. There would have been no occasion to insert that provision if the charterer was to be the agent of the ship in employing stevedores. The addenda leaves undisturbed the provision in clause 15 for discharging at current rates. It is confined only to loading and stowing, it omits the power of nominating by the charterers or their agents, and it fixes a definite price for loading and stowing in the place of current rates.

In harmony with this view of the construction of the contract is the conduct of the parties thereto. Under these two charter parties the appellant loaded about 30 ships in a period of about 15 months and rendered bills therefor to the charterer at $1.75. That figure was inserted in the bills, because that was the appellant's tariff rate, and by agreement it was done to save its face; but the charterer paid its bills at $1.50, for the reason that that was its contract with the appellant, and the charterer was reimbursed by the owners at $1.70 per 1,000 feet, the difference between $1.75 per thousand and

$1.50 being remitted by the appellant to the charterer, and not to the owners, all of which tended to indicate that the appellant was a subcontractor, and not an employé of the owners, and knowingly was doing the work for a less sum than the principal contractor was receiving. The appellant at no time called upon the owners for payment until several· months after the services had been performed and the charterer had become insolvent. It seems clear, therefore, that the appellant was not looking to the ships or to the owners for payment, but was looking to the charterer.

The appellant cites a recent decision of British Columbia courts in the cases of Canadian Stevedoring Co. v. Robin Line Steamship Co. and the same plaintiff against the Seas Shipping Co., [1927] 4 D. L. R. 614, to recover for stevedoring services upon charter parties identical with those which are involved in the case at bar. In those cases the trial court thus construed the meaning of the contract:

"We, the owners, will pay the stevedoring charges (13); we will employ stevedores named by you (15); and in this connection you will load and stow cargo by and through the stevedores so employed by us at a rate not exceeding $1.70 per thousand, unless extra costs should be incurred for some cause arising through our default; (although our contract provides that you are required to load only 300,000 feet per day) yet you may, if you see fit, require the stevedores to work overtime provided you pay the extra expense; we, on the other hand, may only require the stevedores to work overtime, with your consent and at our own expense."

On January 10, 1928, on appeal to the Court of Appeal, the decision of the trial court was affirmed; Mr. Justice M. A. MacDonald dissenting, and another justice concurring in the dissent. We think that the dissenting opinion properly construes the contract. It is therein pointed out that under clause 4 the total carrying space of each vessel was turned over to the charterer; that under clause 13 the owners were to be responsible for all expense of loading and discharging cargoes; that under clause 15, standing alone, the cargo would be stowed or loaded under the owner's supervision, by stevedores employed by the owners, but nominated by the charterer, the payment to be at the current rates, and that by Addenda C a different intention was expressed and a variation was made in regard to loading and stowing by which the charterer agreed to load and stow cargo for $1.70 per 1,000 board feet, or its equivalent; that such was the fixed contract and it was not that a rate "not exceeding $1.70 per 1,000 feet" should be charged, and that Addenda C provided that, in addition to the $1.70, there should be no extra charges during customary working hours, unless the charterer were held up by a breakdown of machinery, etc., but the charterer was given an option to work overtime, the extra expense of which the charterer would have to meet; that, if the owners elected to have the steamer work overtime, they would have to bear all extra expense.

The learned justice found that the addenda was complete in itself and independent of clauses 13 and 15, except on the one point of supervision, and that the provision that the stevedore be nominated by the charterer was removed; that, in short, under clause 15 the stevedore was to be employed by the steamer at current rates; that in Addenda C there was no suggestion of current rates, but the price was fixed; that under clause 15 the owners must employ the stevedore nominated by the charterer, but by the addenda the charterer agreed with the owners to load and stow the cargo, and stevedoring was not mentioned; and that under the contract the charterer might have taken his own employés engaged in lumbering operations to do the loading, and, if at cósts less than $1.70 a thousand, could pocket the difference.

[3] We agree with the court below that it was not ultra vires of the charterer to employ the appellant to render stevedoring services in connection with its traffic in lumber. By its articles of incorporation the charterer defined its objects to be, among other things, "to manufacture, purchase, acquire, buy, sell, deal and traffic in lumber, timber, wood, woodenware goods, chattels and effects; * * * to carry on any other trade or business which can, in the opinion of the directors of the company, be advantageously carried on in connection with or auxiliary to any trade or business authorized by this memorandum of the association, and to do all such things as are incidental or conducive to the attainment of the above objects, or any of them." It seems but reasonable to hold that, in view of the power assumed in the articles of incorporation the charterer, engaged as it was in the business of manufacturing and dealing in lumber, could perform any act incidental to the sale and delivery of its product, and which tended immediately and directly to accomplish the objects for which it was created, and could not only enter into a charter of affreightment, but could, if it found it convenient and

profitable, employ stevedores to handle and ship the product.

In the case of Sewell v. B. C. Towing & Transportation Co., 9 S. C. R. 527, Mr. Justice Strong said: "It is not shown that the sawmill company had not, under their charter or act of incorporation, power to purchase and own a steam tug; in the absence of anything appearing to the contrary, it is to be presumed that they had the power, and the nature of the business which they were incorporated to carry on, as is well known, warrants the inference that the business of such a vessel was, if not necessary, useful, and usual in towing logs and rafts, and thus incidental to their business." And in the dissenting opinion of Justice M. A. MacDonald above referred to it was said: "On the question that it was beyond the power of the charterer to contract with the appellant (in view of its memorandum of association), I do not think this point is open to the respondent, because no right accruing to the respondent has been invaded by the exercise of the power in question. I think, too, that as the charterer was engaged in the lumber trade, and had authority to 'traffic in lumber' and 'to carry on the business of lumbering in all its branches,' and also 'to carry on any other trade or business which can * * * be advantageously carried on in connection with, or as auxiliary to, any trade or business authorized by the memorandum of association,' they had the right to engage in loading lumber on ships—certainly it was incidental to the general objects of the company."

The decree is affirmed.