52 F.2d 397 (1931)
THE GOLDEN GATE.
KNUTSEN
v.
ASSOCIATED OIL CO.
No. 6423.
Circuit Court of Appeals, Ninth Circuit.
September 14, 1931.
*398 Young, Lillick, Olson, Graham & Kelly, E. R. Young, and H. R. Kelly, all of Los Angeles, Cal., and Ira S. Lillick and J. Arthur Olson, both of San Francisco, Cal., for appellant.
Derby, Sharp, Quinby & Tweedt and Daniel W. Hone, all of San Francisco, Cal., and Ray Howard, of Los Angeles, Cal., and Joseph C. Sharp, of San Francisco, Cal., for appellee.
Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.
WILBUR, Circuit Judge.
This is an appeal from a decree in rem against the steamship Golden Gate for the value of fuel oil furnished the vessel by the libelant-appellee. There is no contention that the oil was not in fact delivered, but appellant contends that the charter party under which the vessel was operating at the time the oil was furnished prohibited the charterer from subjecting the vessel to maritime liens, and that the libelant knew, or by the use of reasonable diligence could have ascertained, that the charterer was without such authority.
The oil was delivered to the vessel in four different lots during the year 1926, two at Balboa, Canal Zone, and two at San Pedro, Cal. At that time the vessel was under time charter from the owner to the Southern Alberta Lumber & Supply Company, Limited. The law governing maritime liens at the time was as follows:
"Persons entitled to lien. Any person furnishing repairs, supplies, * * * or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." 46 USCA § 971.
"Persons authorized to procure repairs, supplies, and necessaries. The following persons shall be presumed to have authority from the owner to procure repairs, supplies, * * * and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted." Id., § 972.
"Notice to person furnishing repairs, supplies, and necessaries. * * *; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, * * * the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." Id., § 973.
Appellants rely strongly on the case of United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 182, 67 L. Ed. 361, in which the Supreme Court held that no lien arises for supplies furnished a chartered vessel where the charter forbids it, and where the materialman, by reasonably diligent investigation, could have ascertained there was a charter and gained knowledge of its terms. In that case there was an express provision in the charter party that the charterers "will not suffer nor permit to be continued any lien," and this provision was held to deny the right of the charterer to create a lien. In the instant case the charter party contains a provision requiring the charterer to provide and pay for all fuel oil, but contains no express provision denying the right of the charterer to bind the ship for supplies furnished. It provides "that the charterers shall provide *399 and pay for all the coals and fuel oil except as otherwise agreed. * * *"
The decision of the Supreme Court in The South Coast, 251 U. S. 519, 40 S. Ct. 233, 64 L. Ed. 386, deals with a charter in which the charterer agreed to pay for fuel and supplies furnished the vessel, but did not prohibit the incurring of liens therefor, and held that under such a charter the master could create a lien therefor. This decision is controlling here. The Portland (C. C. A.) 273 F. 401. Appellants contend that this case is distinguishable from The South Coast, because there the charterer was not only required to pay for fuel, but also to discharge liens, thus impliedly recognizing the right to create liens. In answer to a similar contention in The Portland, 273 F. 401, 404, supra, this court said:
"Distinction between that case and this is said to exist because in The South Coast the charter party recognized that liens might be imposed by the charterer, whereas here there is no such recognition, but, on the contrary, there are provisions which negative the right of the charterer to impose a lien `for the purpose of procuring' fuel oil. * * *
"The real ground for the ruling in The South Coast was that the supplies were furnished on orders from the master, and the master had the power to impose a lien unless the charter party excluded the possession of such power."
Again: "* * * An examination of the charter party fails to disclose that the master or charterer had not authority to bind the vessel for supplies of fuel at distant ports. There are no words prohibiting persons enumerated in section 2 of the act of Congress from binding the vessel for necessary things. We think that a charter party with a provision that charterer shall provide and pay for fuel oil does not take away from the master the authority conferred by the act upon the master to bind the ship. It regulates the rights as between owner and charterer; but as to third persons the right of lien is not affected. In The South Coast (D. C.) 233 F. 327, Judge Dooling very clearly enunciated that in a charter party requiring charterer to pay expenses incurred in operating as well as for supplies furnished the vessel, it is an essential precaution for the owners to provide by the terms of the charter that the charterer or the master appointed by him, should be without authority to bind the vessel therefor. This court affirmed that view in The South Coast, 247 F. 84, 159 C. C. A. 302, and the ruling was affirmed by the Supreme Court in The South Coast, 251 U. S. 519, 40 S. Ct. 233, 64 L. Ed. 386."
The rule enunciated in The Portland, supra, applies to supplies ordered by the charterer as well as by the master. By the provisions of 46 USCA §§ 972, 973, supra, the charterer is authorized to create liens on the chartered vessel for necessary supplies furnished it, because it is a "person to whom the management of the vessel at the port of supply is intrusted." This was the rule before the above-mentioned statute was enacted, and the courts have since recognized this power of the charterer. The India (D. C.) 14 F. 476, 478; The Lime Rock (D. C.) 49 F. 383, 384; The George Dumois (C. C. A.) 68 F. 926, 929; The George Farwell (C. C. A.) 103 F. 882; The City of Milford (D. C.) 199 F. 956; Thomas W. Rogers (C. C. A.) 207 F. 69; The Yankee (C. C. A.) 233 F. 919; The Oceana (C. C. A.) 244 F. 80, 83; The Penn (C. C. A.) 276 F. 118.
In view of the fact that in the instant case the charter did not prohibit the charterer from creating liens, it is immaterial as to whether or not the libelant knew or should have known its terms. Augusta W. Snow (C. C. A.) 46 F.(2d) 992.
Appellant's brief contains a heading: "No claim is made against vessel and/or owners until after bankruptcy proceedings instituted against charterer." No conclusion to be derived from this alleged fact is pointed out. No assignment of error on that subject is set forth. The subject-matter of the brief under this heading cites two cases (The Thordis (D. C.) 290 F. 255, 1923 A. M. C. 581; The Robin Goodfellow (C. C. A.) 26 F.(2d) 343, 1928 A. M. C. 1260), and we are evidently expected to infer that the appellant claims that the libelant has waived its lien. No question of waiver was pleaded, and, in any event, there seems to be nothing to the point. See 46 USCA § 974; The India (D. C.) 14 F. 476, 477; The Louie Dole (C. C.) 14 F. 862, 865; Norwegian S. S. Co. v. Washington (C. C. A.) 57 F. 224, 225; The Alvira (D. C.) 63 F. 144, 152; The Thomas W. Rodgers (D. C.) 197 F. 772; Lower, etc., Co. v. Gulf, etc., Co. (C. C. A.) 211 F. 336; Luckenbach v. Pearce (C. C. A.) 212 F. 388, 392; The No. 14 (D. C.) 271 F. 10, 12; The Commack (C. C. A.) 299 F. 229, 231; United States v. Certain Subfreights (D. C.) 300 F. 981, 987; The Eastern Shore (D. C.) 24 F. (2d) 443, 444. Moreover, the point is not *400 presented in a way that entitles it to serious consideration. Rule 11 and Rule 4 in Admiralty of this court make the assignments of error an essential part of the record on appeal, and an objection not raised in the court below and not assigned as error will not be considered on appeal. Wight v. Washoe County Bank (C. C. A.) 251 F. 819; Louie Share Gan v. White (C. C. A.) 258 F. 798.
Furthermore, the contract of sale between the charterer and the libelant contained the following provision: "It is agreed between the parties hereto that seller sells said fuel oil on the credit of the several vessels to which deliveries may be made hereunder, as well as on the promise of buyer to pay therefor."
The statute expressly recognizes the right of a supplier to proceed in rem against the vessel, or in personam (46 USCA § 974); and an action in personam is not a waiver of the maritime lien. The Grand Republic (D. C.) 138 F. 615, affirmed (C. C. A.) 144 F. 1022; The Eastern Shore (D. C.) 24 F. (2d) 443.
The oil received at Balboa was delivered by the Asiatic Petroleum Company, from whom it was purchased by the libelant. Inasmuch as the contract of sale was between the libelant and the charterer, and the supplies were furnished by the libelant pursuant thereto, it is immaterial who made delivery.
Affirmed.