## THE STJERNEBORG.

### THE BRAND.
### DAMPSKIBSSELSKABET DANNEBROG v. SIGNAL OIL & GAS CO. OF CALIFORNIA.

### AKTIESELSKABET BORGESTAD v. SAME.

### No. 9182.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1939.

Lane Summers, of Seattle, Wash. (Hayden, Merritt, Summers & Bucey, of Seattle, Wash., of counsel), for appellants.

Glenn J. Fairbrook, of Seattle, Wash. (Fairbrook & Williams, of Seattle, Wash., of counsel), for appellee.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from decrees in admiralty enforcing liens on two motorships for oil furnished such vessels by appellee.

In September, 1932, appellee entered into a contract with Anglo Canadian Shipping Co., Ltd., by which appellee agreed to sell fuel oil to any vessel which Anglo might "own, charter, operate or be agents for". On May 19, 1933, such contract was modified "to include the fuel oil requirements of any and all vessels owned, chartered and/or operated" by W. L. Comyn & Sons, hereinafter called Comyn. Subsequently, and before the ships in question were chartered by Comyn, the contract was further modified and required appellee to bill Comyn direct for oil used by the latter.

Comyn chartered for a specified time the motorships Brand and Stjerneborg, the charter parties requiring Comyn to provide and pay for all oil. Comyn chartered the "Stjerneborg" on January 27, 1934, and the "Brand" on March 8, 1934. On April 26, 1934, appellee delivered fuel oil to the "Brand" at Point Wells, Washington, and on May 11, 1934, made a further delivery to the "Brand" at San Pedro, California. All deliveries were made on the orders of Comyn. Appellee issued invoices for these deliveries, totalling $4,631.71 to the "Brand and Owners" in care of Comyn. On May 15, 1934, appellee delivered fuel oil to the "Stjerneborg" at Astoria, Oregon, and issued its invoice for $3,824.65 to the "Stjerneborg and Owners" in care of Comyn.

In July, 1934, Comyn by a pledge, created a lien on certain securities in favor of appellee, which lien was second to one held by a Seattle bank. Thereafter appellee waived its lien on the securities by permitting the Seattle bank to obtain a paramount lien on the securities as security for a subsequent loan of $900. Upon sale of the securities, appellee released its claim to $1,474.96 of the proceeds to which it was entitled, and signed a Creditors' Agreement granting Comyn a year's extension of time to meet its obligations. In April, 1935, Comyn released appellee from such Creditors' Agreement.

The pledge agreement contained a provision that it would not preclude appellee from collecting any obligation without resorting to the securities pledged, and that such pledge agreement should not constitute "any release or waiver of any lien" appellee might have against the vessels. The Creditors' Agreement contained a provision that the execution thereof by appellee should not constitute "any release or waiver of any lien or the right to a lien" which appellee might have.

After delivery of fuel oil to it, the "Brand" left for Europe. Upon its return, it was docked at Los Angeles for one day, and then left for Vancouver, B. C., and thence to the Orient. Upon its return, it docked at certain points in California and Washington from March 28, 1935, to April 13, 1935. It then left for the Orient and upon its return was libelled in this cause on June 5, 1935.

After delivery of the fuel oil to it, the "Stjerneborg" left for Australia and other foreign countries, and upon its return, was docked at various points in California,

Washington and Oregon from December 30, 1934, to January 14, 1935. It then left for the Orient, and upon its return was libelled in the instant cause on May 11, 1935.

The answers filed by the owners of the vessels alleged that (1) the owner and the vessels were not liable because the oil was not furnished upon the order of the owner or anyone authorized by it; (2) the oil was furnished upon the credit of Comyn and not that of the vessels; (3) the liens, if any, were waived by appellee's release of its claims upon the securities and proceeds thereof, under the pledge, and by execution of the Creditors' Agreement. The causes were consolidated for trial.

The facts above mentioned being stipulated, the Court adopted such stipulation as its findings and concluded that the fuel oil delivered was necessary for the voyages contemplated, was furnished upon the credit of the vessels, that liens were created and not waived. A decree in favor of appellee was entered in each cause, with interest, from which this appeal was taken.

46 U.S.C.A. § 971 provides: "Any person furnishing * * * supplies * * * to any vessel, whether foreign or domestic, upon the order * * * of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

46 U.S.C.A. § 972 provides: "The following persons shall be presumed to have authority from the owner to procure * * supplies. * * * any person to whom the management of the vessel at the port of supply is intrusted. * * * *"

■ First. Appellants contend that no lien arose because "appellee did, by the terms of its blanket contract and by its course of dealings thereunder, rely solely upon the individual credit of" Comyn, and that there is nothing to show that Comyn "was ever granted authority to bind the vessels by imposing a lien thereon". Marshall & Co. v. President Arthur, 279 U.S. 564, 49 S.Ct. 420, 423, 73 L.Ed. 846, is heavily relied on, but we think it is not applicable. It was there held that: " * * * the libellant, having made specific contracts for an express security, instead of resting on the lien which the law would otherwise give, must rely on the contracts it made for itself, and cannot now, in a change of circumstances, resort to the lien it would have had in the absence of the special agreements; and that by taking other and different security, upon which it relied, and which it still retains, without stipulating for the retention of the lien, it has waived the lien which it otherwise would have had." The controlling factor in that case was that at the time of delivery of coal libellant insisted upon and obtained security for the amount owing it. A like fact is absent here.

The instant case is controlled by The Portland, 9 Cir., 273 F. 401 and The Golden Gate, 9 Cir., 52 F.2d 397, certiorari denied 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576, which hold adversely to appellants' contentions. Appellants ask us to again consider the contentions made implying that the cases mentioned should be overruled. The rule of The Portland, supra, was re-examined in the Golden Gate, supra, and again in The Luddco 41, 9 Cir., 66 F.2d 997. No compelling reason requires re-examination now. The owners are not without a means of protection. 46 U.S.C.A. § 973.

■■ Second. Appellants further contend that if a lien arose it was waived by appellee because it entered the creditor's agreement and accepted security by the pledge agreement. It will be recalled that by both agreements the rights to liens were retained. Appellee had the right to rely on the credit of both the vessels and the charterer. Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 10, 41 S.Ct. 1, 65 L.Ed. 97. There is nothing inconsistent in appellee's actions to show that it was renouncing the liens, but in fact retention thereof was specifically provided for. We think appellee did not waive its rights to the liens. See: El Amigo, 5 Cir., 285 F. 868; The Golden Gate, supra, 52 F.2d 400. In Marshall & Co. v. President Arthur, supra, 279 U.S. 572, 49 S.Ct. 420, 73 L.Ed. 846, and in The City of Seattle, 2 Cir., 61 F.2d 763, 764, there were waivers of the liens, but in both there was no reservation of the lien. The inference is that had there been such a reservation, as here, there would have been no waivers.

■■ Third. Appellants also contend that "in admiralty interest may be properly disallowed or reduced because of unusual delay in the prosecution of an admiralty cause". Appellants concede that they are responsible for a part of the delay, but that "there is a substantial excess of delay justly chargeable to appellee." The record does not disclose which of the parties caused the delay. The allowance of interest is dis-

cretionary. The Albert Dumois, 177 U.S. 240, 255, 20 S.Ct. 595, 44 L.Ed. 751. In the absence of anything in the record disclosing who may be blamed for the delay, we are not warranted in holding that the trial court abused its discretion.

Affirmed.