## THE SOUTH COAST.[1]

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 68.    Submitted November 10, 1919.—Decided March 1, 1920.

In purchasing necessary supplies, the master of a demised vessel, appointed by the owner but under the orders of the charterer, is the charterer's agent. P. 523.

A charter-party, demising a vessel, required the charterer to pay all expenses and save the owner harmless from liens, allowed the owner to retake the vessel should the charterer fail to discharge any liens within a stated period after they were imposed, and placed the master, appointed by the owner, under the charterer's orders. Applying the Act of June 23, 1910, *held* that the charter-party, if it did not grant, at least assumed authority in the charterer to bind the vessel for necessary supplies purchased by the master in a domestic port, and that the statutory presumption of such authority could not be dispelled by denials and warnings from the owner to the supply man. *Id.*

247 Fed. Rep. 84, affirmed.

THE case is stated in the opinion.

*Mr. Oliver Dibble* for petitioner. *Mr. Marcel E. Cerf* and *Mr. C. H. Sooy* were on the briefs.

They relied largely on the following authorities, decided

---

[1] The docket title of this case is: *South Coast Steamship Company, claimant of the steamer "South Coast," etc., v. J. C. Rudbach.*

before and since the Act of June 23, 1910, as sustaining the proposition that a charter-party which requires the charterer to furnish supplies to the ship withdraws from the master the power to order supplies for which the materialman, with knowledge of the terms of the charter-party, may assert a lien. *The Underwriter*, 119 Fed. Rep. 713; *The Francis J. O'Hara, Jr.*, 229 Fed. Rep. 312; *The Columbus* (1879), 5 Sawy. 487; *The William Cook* (1882), 12 Fed. Rep. 919; *The S. M. Whipple* (1881), 14 Fed. Rep. 354; *The Secret* (1879), 15 Fed. Rep. 480; *Stephenson* v. *The Francis* (1884), 21 Fed. Rep. 715; *The Cumberland* (1886), 30 Fed. Rep. 449; *The Ellen Holgate* (1887), 30 Fed. Rep. 125; *The International* (1887), 30 Fed. Rep. 375; *The Samuel Marshall* (1892), 49 Fed. Rep. 754; *The Samuel Marshall* (1893), 54 Fed. Rep. 396; *The Kate* (1896), 164 U. S. 458; *The Valencia* (1897), 165 U. S. 264; *The Alvira* (1894), 63 Fed. Rep. 144; *The Rosalie* (1895), 75 Fed. Rep. 29; *The H. C. Grady* (1898), 87 Fed. Rep. 232; *The Robert Dollar* (1902), 115 Fed. Rep. 218; *The North Pacific* (1900), 100 Fed. Rep. 490; *The George Farwell* (1900), 103 Fed. Rep. 882; *The Vigilant* (1907), 151 Fed. Rep. 747; *Northwestern Fuel Co.* v. *Dunkley-Williams Co.* (1909), 174 Fed. Rep. 121; *The City of Milford* (1912), 199 Fed. Rep. 956; *The Thomas W. Rodgers* (1912), 197 Fed. Rep. 772; *The Ha Ha* (1912), 195 Fed. Rep. 1013; *The J. Doherty* (1913), 207 Fed. Rep. 997; *The Malola* (1914), 214 Fed. Rep. 308; *The Oceana* (1916), 233 Fed. Rep. 139; *The Yankee* (1916), 233 Fed. Rep. 919; *The Oceana* (1917), 244 Fed. Rep. 80.

A shipowner's immunity from the necessity of paying the ship's bills relieves his ship from a like necessity. *The Sarah Cullen*, 45 Fed. Rep. 511; *The Iris*, 100 Fed. Rep. 104.

The provision of the charter-party requiring the charterer to hold the owner harmless from any lien asserted for supplies furnished the ship is not tantamount to a declara-

tion by the owner that such liens may be asserted. *The Oceana*, 244 Fed. Rep. 80; *Northwestern Fuel Co.* v. *Dunkley-Williams Co., supra; The City of Milford, supra; The Gen. J. A. Dumont*, 158 Fed. Rep. 312; *The Golden Rod*, 151 Fed. Rep. 6; *The Surprise*, 129 Fed. Rep. 873, 880.

By the terms of the charter-party and by virtue of the notice given libellant, the charterer and his masters and his agent were without authority to bind the vessel for the supplies. *The Sarah Cullen, supra; The Francis J. O'Hara, Jr., supra; The Surprise, supra; The New Brunswick*, 129 Fed. Rep. 893; *The J. Doherty, supra.*

The law applicable to this case was not altered by the Act of June 23, 1910. See opinion of the court below. Also *The Sinaloa*, 209 Fed. Rep. 287; *The Dredge A*, 217 Fed. Rep. 617; *The Yankee, supra.* There is a presumption that the legislature does not intend changes not clearly evinced.

"It is the general principle of the maritime law that an admiralty lien is to be construed *stricti juris*, and cannot be extended by construction, analogy or inference." *The James T. Furber*, 157 Fed. Rep. 126, 129; *Pratt* v. *Reed*, 19 How. 359; *The Lottawanna*, 21 Wall. 558; *The Aurora*, 194 Fed. Rep. 559; *The Yankee Blade*, 19 How. 82; *The Dixie*, 236 Fed. Rep. 607.

The statute specifically provides that there shall be no lien if the furnisher knew or could have ascertained by the exercise of reasonable diligence that, for any reason, the person ordering the supplies had no authority to bind the vessel therefor. The furnisher in the instant case had been warned that the owner and the charterer had agreed, either by the terms of the written charter-party or by some other contract, that the vessel should not be held. Before he furnished the goods he had been informed of this fact by the owner, the charterer and the charterer's agent. Notwithstanding the words "or for any other

reason," appearing in the statute, the learned District Judge limited the application of the statute to the terms of the charter-party.

*Mr. S. Hasket Derby* for respondent. *Mr. Ira S. Lillick* was on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a libel against the Steamer South Coast, belonging to the claimant, a California corporation, and registered in San Francisco, for necessary supplies furnished in San Pedro, California. The answer denies the authority of the master to bind the steamer. The bare vessel at the time was under charter to one Levick, the contract stipulating that Levick was to pay all charges and to save the owner harmless from all liens or expenses that it might be put to in consequence of such liens. There was also a provision that the owner might retake the vessel in case of failure of Levick to discharge within thirty days any debts which were liens upon it, and another for surrender of the vessel free of all liens upon Levick's failure to make certain payments. When the supplies were ordered representatives of the owner in San Pedro warned the libellant that the steamer was under charter and that he must not furnish the supplies on the credit of the vessel. He replied that he would not furnish them in any other way, but the reply does not affect the case because by the terms of the charter the master who ordered them, although appointed by the owner, was under the orders of Levick. It is agreed by both courts below that if the owner had power to prevent the attaching of a lien by its warning it had done so. Both courts however held that the charter gave the master power to create the lien. 233 Fed. Rep. 327. 247 Fed. Rep. 84. *S. C.* 159 C. C. A. 302.

By the Act of June 23, 1910, c. 373, § 1, 36 Stat. 604, a maritime lien is given for such supplies and by § 3 a presumption is declared that a master appointed by a charterer has authority from the owner to procure them. It is true that the act goes on that nothing in it shall be considered to give a lien where the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter-party, or for any other reason, the person ordering the necessaries was without authority to bind the vessel. But the authority of the owner to prohibit or to speak was displaced, so far as the charter went, by that conferred upon the charterers, who became owners *pro hac vice*, and therefore, unless the charter excluded the master's power, the owner could not forbid its use. The charter-party recognizes that liens may be imposed by the charterers and allowed to stand for less than a month and there seems to be no sufficient reason for supposing the words not to refer to all the ordinary maritime liens recognized by the law. The statute had given a lien for supplies in a domestic port and therefore had made that one of these ordinary liens. Therefore the charterer was assumed to have power to authorize the master to impose a lien in a domestic port, and if the assumption expressed in words was not equivalent to a grant of power, at least it cannot be taken to have excluded it. There was nothing from which the furnisher could have ascertained that the master did not have power to bind the ship.

*Decree affirmed.*

MR. JUSTICE MCKENNA, MR. JUSTICE PITNEY and MR. JUSTICE CLARKE dissent.