### THE ADMIRAL GOODRICH.

(District Court, W. D. Washington, N. D.   January 19, 1922.)

#### No. 5530.

**Maritime liens ⊕=30—Seller of fuel oil held charged with duty to ascertain charterer's right to bind vessel.**

Testimony by the seller of fuel oil to a vessel that he made no effort to ascertain the ownership of the vessel, because he knew from previous sales that the vessels of that line had been transferred back and forth between several corporations, among which, however, the company ordering the oil was not included, *held* to show knowledge of facts which imposed on him the duty to inquire into the authority of the latter company to order oil on behalf of the vessel, which inquiry would have revealed that it was a charterer, without authority to bind the vessel, so that the seller had, under Act June 23, 1910, § 3 (Comp. St. § 7785), no lien on the vessel.

In Admiralty. Libel by the Shell Company of California against the steamship Admiral Goodrich to enforce a lien for fuel oil furnished to the vessel. Decree rendered for plaintiff.

Tucker & Hyland, of Seattle, Wash., for libelant.
Grosscup & Morrow, of Seattle, Wash., for claimant.

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

NETERER, District Judge. The libelant seeks to recover compensation for fuel oil furnished August 14, 1919, to the Gulf Mail Steamship Company, charterer of the steamship Admiral Goodrich. The steamship Admiral Goodrich, at the time being owned by the Pacific Steamship Company. The Gulf Mail Steamship Company, charterer, libelant, and claimant all at the time had principal offices at San Francisco. By the terms of the charter party the charterer was required to keep the steamship free from liens. The claimant denies liability and alleges that the libelant failed to exercise the required diligence to ascertain the authority of the charterer to bind the steamship. Mr. Buckley, assistant manager of the fuel oil department of the libelant, testifies that Mr. Hartman, the president of the charterer, by telephone called him up and "told me they wanted oil for the Admiral Goodrich; that they were in a hurry for it." He further stated:

"The Gulf Mail Steamship Company, was acting as manager of the steamer, and charged it to the steamer and owner. Q. What inquiry did you make as to ownership? A. I didn't make any. Q. Why didn't you make any? A. I never had been able to find out who the owners of the steamer were, they changed around so much. Q. What steamers do you mean? A. Well, take these steamers on the Admiral Line, and Pacific Steamship Company, the Alaska Steamship Company, and the Pacific-Alaska Steamship Company, they were shifting their ships around, so you could not keep track of who the owners were; in fact, one time I remember a case where I tried to find out who the owners were, and they were 'huffy' about it, and thought I was trying to get hold of the controlling stock, so I gave it up as bad business. We never could get any business, if we followed these tactics."

On cross-examination it was shown that the Pacific Steamship Company purchased fuel oil for the Admiral Goodrich nine times within ten months, the last purchase being June 20, 1919, the dates of purchase being as follows: October 28, November 21, December 6, 12, 20, 26, and 27, 1918, and February 5, March 31, May 16, and June 20, 1919. Letters of the libelant are presented with relation to each delivery and reference is made to purchase of fuel oil for the Admiral Goodrich. In all these letters it is stated that advices had been given that the Admiral Goodrich would take delivery of oil, or that fuel oil had been delivered to Admiral Goodrich. The Pacific-Alaska Steamship Company is a holding company for the Pacific Steamship Company. Under date of October 24, 1918, the steamship Admiral Goodrich was formally transferred to the claimant.

Libelant relies on The South Coast, 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386; The Dumois, 68 Fed. 926, 15 C. C. A. 675; The St. John's (C. C. A.) 273 Fed. 1005; The Angie B. Watson (D. C.) 274 Fed. 219.

The relation between libelant and claimant on furnishing oil to the Admiral Goodrich, and its disclosed knowledge of the confusion of the steamers on the Admiral Line, to which the charterer was not a party or in any way identified, is conclusive that the libelant must be charged with such knowledge of ownership as required reasonable diligence to ascertain the terms of the charter party, and such diligence would have disclosed that the terms of the charter party prohibited the charterer from binding the vessel. Section 7785, Comp. St.; Act June 23, 1910, c. 373, § 3; 36 Stat. 605.

The South Coast, supra, is distinguished from the instant case, because in that case the charter party permitted a lien, whereas in the instant case the charter party prohibits a lien. The Dumois, supra, was decided in May, 1895; whereas the act in issue was enacted June 23, 1910. The St. John's, supra, is distinguished, in that libelant knew nothing about the ship, except that it was in possession of those who ordered the supplies, whereas in the instant case libelant knew there was "confusion" about the ownership of the Admiral steamers with companies other than the charterer, and had furnished fuel for the Admiral Goodrich to the claimant for eight months previous. The Angie B. Watson, supra, has no bearing on the facts here.

Decree for claimant.