## THE AUGUSTA W. SNOW.
### Admr. No. 248.

District Court, D. Massachusetts.

May 26, 1930.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for plaintiff.

John W. Lowrance, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a proceeding in rem against a schooner, brought by the libelant, who is seeking to enforce a claim for repairs on the vessel.

At the threshold of the case lies a question of law arising upon undisputed facts. Upon this question the liability of the vessel turns.

The facts are these:

In May, 1929, the schooner Augusta W. Snow was delivered by the claimant to one Court and others under an agreement of sale providing, among other things:

"5. You to take delivery of the vessel at Boothbay Harbor, Maine, and to pay all expense of upkeep, repairs, fittings, etc.

"6. It is our understanding that you have inspected the vessel and have taken her as is and where is, and that any bills incurred against the vessel from this date, such as repairs, painting, sails, drydocking, etc., are for your account."

Court thereafter went to the libelant's office, stated that he was owner of the vessel, and requested them to do work on her. The vessel was brought to libelant's yard, and work was performed, during the course of which Court again stated to the president of libelant corporation that he was owner of the vessel. After the repairs had been completed the libelant first discovered that Court was an agreed purchaser of the vessel in possession under the terms of the agreement referred to. Libelant subsequently instituted this action against the vessel.

The applicable statutes are sections 971, 972, and 973 of title 46, USCA (Act of June 5, 1920, c. 250, § 30, subsections P, Q, and R, 41 Stat. 1005). These statutes read as follows:

"§ 971. Any person furnishing repairs, supplies, * * * use of dry dock or ma-rine railway, or other necessaries, to any vessel, * * * upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, * * * and it shall not be necessary to allege or prove that credit was given to the vessel.

"§ 972. The following persons shall be presumed to have authority from the owner to procure repairs, supplies, * * * use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. * * *

"§ 973. The officers and agents of a vessel specified in section 972, shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

It is contended by the claimant that this case falls within the doctrine of United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361. The libelant, on the other hand, argues that the case is controlled by The South Coast, 251 U. S. 519, 40 S. Ct. 233, 64 L. Ed. 386.

A careful study of these cases leaves me with the conclusion that United States v. Carver, supra, does not control. The only way the two cases can be reconciled is by laying particular stress, as apparently Mr. Justice Holmes did, upon the provisions of the charter party before the court in the later case which expressly denied to the charterers the right to create any lien upon the vessel. The court found that these provisions amounted to a primary undertaking that no lien should be imposed.

In the case at bar, the contract of sale contains no provisions which could be said to create a primary undertaking that no lien should be imposed. On the contrary, the provisions of the contract of sale, above quoted, would indicate that the parties contemplated that bills might be "incurred against the vessel * * * such as repairs * * *" and "dry docking"; the purchaser, Court, merely agreeing to save the seller harmless from any such liabilities.

It is urged by the claimant that the contract of sale was drawn without the assistance of legal advice and that these stipulations should be given a meaning which would have the effect of denying to the purchaser the right to suffer or permit a lien. I do not think, however, that the fact that the contract was drawn by a layman would justify the court in giving a strained and unnatural meaning to the clear language of the contract.

The case of The South Coast, supra, and other cases to the same effect, must control my decision, and I rule that the terms of the contract of sale did not withhold from the purchaser the right to incur liens upon the vessel. The South Coast, supra; The Penza (C. C. A.) 9 F.(2d) 527; The Anna E. Morse (C. C. A.) 286 F. 794; The Portland (C. C. A.) 273 F. 401; The Hammond (D. C.) 17 F.(2d) 118.

Court was an agreed purchaser in possession, and as such was the "person to whom the management of the vessel at the port of supply" was intrusted, and by virtue of the statutes he was presumed to have authority from the owner to procure the repairs and incur the indebtedness. El Amigo (C. C. A.) 285 F. 868; The Anna E. Morse, supra; Virginia Shipbuilding Corp. v. United States Shipping Board Emergency Fleet Corp. (D. C.) 11 F.(2d) 156.

In view of the foregoing it is a moot question whether the libelant exercised reasonable diligence in inquiring into Court's authority. If reasonable investigation would have failed to disclose the existence of any inhibition against liens in the agreement of sale, no rights were lost if the furnisher did not exercise that reasonable diligence required by the statute. The Bethlehem (C. C. A.) 4 F.(2d) 308; The Penza, supra.

While the libelant took no steps to verify the assurances of Court that he was the owner of the vessel, I doubt whether, under the particular circumstances of the case, it was required to do so. It was not in possession of any information that would lead the libelant to think that Court had possession under an agreement of purchase. The case differs from those where a charterer or an ostensible agent orders the repairs. It also differs from those cases where the libelant had independent information sufficient to demand a thorough investigation.

In U. S. v. Certain Subfreights due Steamship Neponset (D. C.) 300 F. 981 at page 986, Judge Lowell ruled that the furnisher "need go no further in his investiga-tion if he finds out that the person ordering the repairs or supplies is the owner * * * unless he has reasonable grounds to suppose that the owner was in possession under an agreement for purchase which forbade the imposition of liens."

In the case at bar, there is nothing found to furnish the libelant with any reasonable grounds to suppose that the owner was in possession under an agreement for purchase, if we assume that the agreement forbade the imposition of liens, an assumption which is contrary to my ruling in this case. Cf. The S. T. Loveland (D. C.) 7 F.(2d) 626; El Amigo, supra; The Anna E. Morse, supra.

I find and rule that the libelant holds a maritime lien against the schooner Augusta W. Snow, her engines, boats, tackle, apparel, and furniture for the payment of its claim for repairs, labor, and material furnished. The case should therefore go to an assessor for further proceedings.