## THE GOLDEN GATE.
### No. 2600.

District Court, S. D. California, C. D.
Jan. 16, 1931.

Derby, Sharp, Quinby & Tweedt, of San Francisco, Cal., and Ray Howard, of Los Angeles, Cal., for libelant.

Young, Lillick, Olson, Graham & Kelly, of Los Angeles, Cal., for claimant.

JAMES, District Judge.

A libel in rem was brought to enforce payment of a claim in the amount of $17,-025.12, alleged to have accrued in favor of libelant on account of fuel oil furnished for the use of the steamship Golden Gate. There is no real dispute here as to the fact that the oil was furnished for the use of the ship or that the contract value thereof was the total amount stated. Two deliveries of the oil were made at Balboa in the Canal Zone, on dates July 10, 1926, and October 13, 1926, respectively; two deliveries were made at San Pedro, Cal., on dates August 20, 1926, and October 27, 1926, respectively.

At the time the contract for the furnishing of the fuel oil was made and when deliveries were rendered as hereinbefore stated, the Southern Alberta Lumber & Supply Company, hereinafter referred to as the lumber company, was the charterer of the steamship. The charter party was made at Seattle, Wash., on June 5, 1925, and by it the steamship was let to the lumber company for a period of eighteen months for world-wide service, fully equipped by the owner, the claimant named in the title, and with a full complement of officers, seamen, engineers, and firemen. The libelant had no notice of the fact that the lumber company was other than the owner of the steamship. The agent of libelant, who negotiated the contract for the furnishing of the fuel oil, testified that the president of the lumber company told him that the company owned the Golden Gate and that they "possibly would be operating other vessels, but whether they would own them or charter them he did not know." The contract under which deliveries of the oil were made, contained this provision:

"It is agreed between the parties hereto that the seller sells said fuel oil on the credit of the several vessels to which deliveries may be made hereunder, as well as on the promise of the buyer to pay therefor."

It was the custom of the master of the vessel to notify the agent of the lumber company at either of the specified ports when fuel was needed and to name the quantity required. Deliveries would then be made and a receipt given either by the master or the chief engineer.

Briefly stated, the claimant urges, as against the right of libelant to a decree, these contentions: First, that the charter under which the lumber company operated the vessel prohibited the charterer from subjecting the vessel to maritime liens; second, that the libelant failed to use reasonable care to apprise itself of the limitations on the power of the charterer in the regard stated.

We have first to inquire as to whether the charter did in fact forbid the creation of liens. If it did not, then the case for the claimant falls, and no duty to investigate the contract terms between the shipowner and the charterer devolved upon libelant. See 46 USCA §§ 971, 972, and 973. The provisions of the charter important to be considered are two, which are now quoted:

"That the charterers shall provide and pay for all the coals or fuel oil, except as otherwise agreed * * * and all other usual expenses, except those before stated, but when the vessel puts into port for causes for which the steamer is responsible, then all such charges incurred shall be paid by owners."

"That the charterers shall accept and pay for all coal or fuel oil in the steamers bunkers and the owners shall, on expiration of this charter party, pay for all coal or fuel oil left in the bunkers at the current market price at the respective places where she is delivered to them."

Conditions in ship charters requiring merely that the charterer shall be obligated to pay for supplies, without an expression denying to the charterer the power to create liens, have been held insufficient to afford the owner the defense here made. The case of The South Coast, after being heard in the District Court (233 F. 327, 328), was carried to the Court of Appeals for the Ninth Circuit, (247 F. 84), and later reached the Supreme Court (251 U. S. 519, 40 S. Ct. 233, 64 L.

Ed. 386), has been cited as sustaining the case for the libelant, and I think it is clearly applicable to the facts which are here shown. The charter considered in the case of The South Coast required that the charterer should pay for all fuel and supplies and that he should save the owner "harmless from all liens, losses, damages, costs, or expenses. * * *" It is also shown in The South Coast Case that the owner warned the libelant there against furnishing any supplies on the ship's account. Nevertheless the libel was held good. Whether the fuel was ordered by the master or agent of the charterer would make no difference, because section 973, 46 USCA, expressly recognizes the right of a charterer or his agent to purchase supplies on the credit of the ship.

A file of correspondence, consisting of letters and telegrams, with receipts, etc., was offered in evidence on behalf of the claimant and objected to by the libelant. The ruling on the objection was reserved. The correspondence referred to was mainly between a navigation company at Vancouver, B. C., and a ship handling company at the port of San Pedro, Cal. The Vancouver company represented the lumber company in the handling of the latter's ships. The correspondence in the main consisted of directions to the San Pedro agent regarding the fueling of ships, including the Golden Gate. I am of the opinion that this file of correspondence contained no evidence material to the controversy presented by this libel. The objection to the introduction of the same is sustained, and an exception noted in favor of the claimant.

It may perhaps seem that due attention has not been given to the most complete and exhaustive briefs filed by the parties in this suit. I have made a careful examination of the argument, and it seems unnecessary to go further than to determine, as I have, that the charter in this case did not prohibit the creation of liens against the ship by the charterer for necessary supplies. If the question just answered were assumed to be debatable, I would further hold that the libelant was not guilty of negligence in failing to inquire regarding the terms of the charter when it was not notified that there was a charter, but, on the contrary, was informed by the lumber company's president that the company owned the vessel.

From the conclusions made, the findings and decree must necessarily be in favor of the libelant. It is so ordered.