**REAGAN TOOL COMPANY, Inc., Libelant,**

v.

**H. H. BUTTS DREDGING & CONSTRUCTION COMPANY, Inc., in personam, and the DREDGE RODDY O, its tackle, furniture, appurtenances, etc., in rem, Respondents.**

**CENAC TOWING COMPANY, Inc., Libelant,**

v.

**H. H. BUTTS DREDGING & CONSTRUCTION COMPANY, Inc., in personam, and the Dredge Roddy O, its tackle, furniture, appurtenances, etc., in rem, Respondents.**

**M. J. FRANICEVICH TOWING COMPANY, Inc., Libelant,**

v.

**DREDGE J. E. JUMONVILLE, her tackle, appurtenances, furniture, etc., and H. H. Butts Dredging & Construction Company, Inc., Respondents.**

Nos. 5114, 5116, 5118.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 9, 1962.

Phelps, Dunbar, Marks, Claverie & Sims, W. Eugene Davis, George W. Healy, III, and Peter G. Burke, New Orleans, La., for Reagan Tool Co., Inc., Cenac Towing Co., Inc. and Baldwin-Lima-Hamilton Corp.

A. D. Freeman, Jr., New Orleans, La., for M. J. Franicevich Towing Co., Inc.

M. J. Duran, New Orleans, La., for H. H. Butts Dredging & Construction Company, Inc.

Robert D. Edwards, Gretna, La., Thomas B. Wheeler, New Orleans, La., for J. E. Jumonville.

Dufour, St. Paul, Levy & Marx, William M. Lucas, Jr., New Orleans, La., for L. & L. Oil Co., Inc. and Lee & Leon Oil Co., Inc.

AINSWORTH, District Judge.

These consolidated cases are libels filed *in personam* against H. H. Butts Dredging & Construction Company, Inc. and *in rem* against two dredges, the RODDY O and the J. E. JUMONVILLE. Intervening libels were also filed against the Butts Company and the dredges. One intervenor, however, seeks only a remedy *in rem*. The suits and interventions were based on unpaid claims for repairs, towing services, supplies and necessaries furnished to the dredges.

The owner filed his claim and excepted to the libels herein against the dredges which are under seizure, averring that he had no knowledge of nor did he authorize the furnishing of the described services for which a maritime lien is sought. At the trial he contended that the dredges were on bare boat charter to the Butts Company with a specific agreement that no encumbrance was to be placed on the dredges by the charter or lessee without specific approval of the owner.

Prior to December, 1960, the owner by oral agreement leased the dredges to J. E. Jumonville Contractor, Inc., of which he was the controlling shareholder. No restrictions were placed by him on the corporation's management of the vessels. On December 15, 1960, J. E. Jumonville Contractor, Inc. entered into a written contract with H. H. Butts Dredging & Construction Company, Inc., whereby the Butts Company was to procure rental work for the two dredges which were to be fully equipped, maintained and operated by the Jumonville Corporation. The contract, by its terms, expired on July 1 but was continued in effect by mutual consent until August 31, 1961. Under the contract the Jumonville Corporation reserved the right to reject any work obtained for it by the Butts Company.

There was no provision prohibiting the incurring of liens by Butts for necessary supplies. The evidence shows that the Butts Company was authorized to procure towage services, fuel oil and other necessaries during the term of contract and if it incurred and paid any expenses they were reimbursed by the Jumonville Corporation. Signs were placed on the two dredges immediately after the written contract was entered into, stating that they were "Leased to H. H. Butts Dredging & Construction Company, Inc." On September 1, 1961, an oral agreement was entered into between the Jumonville Corporation and the Butts Company, the terms of which are somewhat confused

and contradictory as they are described by the witnesses, Jumonville and Butts. Butts stated that his understanding of the oral agreement was that his company had purchased the two dredges and was operating them as owner though the formal written documents of sale and transfer had not yet been executed. He said that he understood his corporation was to place no encumbrance or mortgage on the dredges but that it was authorized under the oral agreement to secure towing services, order supplies and procure repairs without specific approval from the owner. Jumonville testified that the oral agreement was a bare boat charter and that he specifically forbade the Butts Company to place any encumbrance on the dredges. In Butts' discovery deposition (p. 30) taken on February 23, 1962, which was jointly offered in evidence by all of the parties, he testified in regard to the prohibition against encumbrance on and after September 1, 1961, as follows:

"Q You are talking about mortgages. I am asking you if Mr. Jumonville ever told you, or anyone else ever told you, that you had no authority to impose liens on those two dredges. I am not asking what your conclusion was or what your lawyer told you; I am just asking whether Mr. Jumonville ever told you.

"A I don't know how to answer that; I really don't. *The discussions of liens had not ever occurred in any of our conversations.*"

At the trial he contradicted this statement saying he was forbidden to impose maritime liens on the dredges, though not prohibited from securing services which gave rise to liens.

■■■ The owner has failed to establish clearly by the evidence the terms of a so-called oral bare boat charter, and particularly that there was a prohibition against incurring of maritime liens.

The value and accuracy of the amounts claimed for services of the several libelants are not disputed by respondents or the owner of the dredges.

Cenac Towing Company, Inc. provided towage services and fuel oil to the dredge RODDY O from May, 1961, to August 31, 1961, for $2,585.72, and from September 1, 1961 to November 4, 1961, for $3,468.01, totaling $6,053.73.

Cenac also furnished towage services to the dredge J. E. JUMONVILLE for August, 1961, for $697.50, and November, 1961, for $300.00, totaling $997.50.

Reagan Tool Company, Inc. during the months of October and November, 1961, performed necessary repairs to the dredge RODDY O, occasioned by the dropping of the boom, in the amount of $11,269.36.

L. & L. Oil Company, Inc. sold and delivered diesel fuel to the dredge J. E. JUMONVILLE on October 23, 1961 for the sum of $2,931.22.

Lee & Leon Oil Company, Inc. sold and delivered fuel and petroleum products to the dredge J. E. JUMONVILLE on October 23, 1961 for $833.16, and on September 6, 1961 for $225.07, totaling $1,058.23.

M. J. Franicevich Towing Company, Inc. furnished towage services to the dredge J. E. JUMONVILLE in July, 1961, for $1,200.00, less paid on account $500.00, balance $700.00, and in November, 1961, for $1,485.00, totaling $2,185.00.

Baldwin-Lima-Hamilton Corporation furnished a ring gear and accessories for the dredge J. E. JUMONVILLE in response to a letter sent to it on June 27, 1961 by Mr. Butts with the knowledge of Mr. Jumonville. In the letter Butts stated that as of December, 1960, he had leased the dredges with option to purchase and that Jumonville had nothing to do with the operations or policies of the Butts Company. On the trial of the case Butts admitted that the statement in the letter was intentionally false (he termed it an "outright lie") and was made because Jumonville himself would have been unable to obtain credit and it was necessary to make the false representation in order to obtain the gear.

During July, 1961, Baldwin-Lima-Hamilton sold the said equipment on the order of the Butts Company and it was installed on the dredge J. E. JUMONVILLE. The purchase price of the equipment was $14,202.65, of which $4,202.15 was paid in cash, and the balance due was evidenced by a promissory note dated August 16, 1961 in the sum of $10,000.00 made by the Butts Company to the order of Baldwin-Lima-Hamilton. The present unpaid balance of $6,000.00 is due for the purchase price of the equipment.

J. E. Jumonville Contractor, Inc. subsequently reimbursed H. H. Butts Dredging & Construction Company, Inc. the sum of $4,202.15 representing the downpayment made by Butts Company for the equipment.

Thus a substantial portion of the claims here was for expenses incurred during the existence of the contract of December 16, 1960 under which it is undisputed that the Jumonville Corporation was to fully equip, maintain, and operate the dredges. The claimants having accrued claims under the December, 1960, written contract which expired August 31, 1961, are as follows: Cenac $2,585.72 plus $697.50, Franicevich $700.00, and Baldwin-Lima-Hamilton $6,000.00, a total of $10,983.22.

As to this amount, therefore, the *in rem* proceedings occurred under the December, 1960, contract, and there can be no serious disagreement between the parties as to the validity of the seizure.

The balance of the claims was incurred on and after September 1, 1961 when Butts stated that his company was operating the dredges as owner and Jumonville testified that they were being operated under an oral bare boat charter.

The owner has failed to prove that Butts was prohibited in the oral agreement from incurring liens on the dredges subsequent to September 1, 1961. In his discovery deposition Butts swore that discussion of liens had never occurred in his conversations with the owner. He later recanted this statement at the trial hereof. Butts nevertheless was authorized to secure towing services, order supplies and procure repairs without specific approval of the owner. These were necessary in order to keep the dredges going. This being true it necessarily follows that these services as well as those prior to September 1, 1961 gave rise to a maritime lien by operation of law. 46 U.S.C.A. § 971. It would be a contradiction to hold otherwise. Though libelants invoiced the Butts Company and not the Jumonville Corporation for services and supplies, none of them did anything which could be considered as a waiver of any of the rights which they had under the law to maritime liens.

It is true that the supplier must make a diligent effort to ascertain the terms of the charter party or the contract. 46 U.S.C.A. § 973. But it was impossible here to discover a clause in the contract specifically prohibiting the incurring of liens since there was no written contract between the parties after August 31, 1961. If the owner wished to protect himself and his dredges against the incurring of liens, he had a simple and ready means of protection. All that was necessary for him to do was to provide in his contract with the Butts Company a clear and unambiguous provision prohibiting Butts from incurring liens on the dredges in order to rebut the legal presumption that the charterer may incur expenses giving rise to liens. 46 U.S.C.A. § 972. Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940); South Coast Steamship Co. v. Rudbach, 251 U.S. 519, 522, 40 S.Ct. 233, 64 L.Ed. 386 (1920); Gilmore & Black, The Law of Admiralty, p. 566, p. 568.

Gilmore & Black, The Law of Admiralty, at p. 566, states the course of action the ship owner must follow to keep his chartered vessel free from liens is as follows:

"Any owner who wants to keep his ship free of contract liens while under charter can do so, and it is hard to understand why any charter

drawn by competent counsel should omit the 'will not suffer nor permit to be continued any lien' clause which both Carver and Signal Oil cite as a sufficient 'prohibition of lien.'"

Gilmore & Black states further at p. 568:

"To prevent the lien from arising, the charter or purchase agreement must contain a 'prohibition of lien' clause and a 'provide and pay' clause is not good enough."

In *Interstate Tractor & Equipment Co. v. The Mylark*, 90 F.Supp. 466 (D. Oregon 1950), the court considered a clause in which the purchaser of a vessel was to keep it "free and clear of all liens and encumbrances." The court held that even this language did not take away from the purchaser the right to incur liens and that the clause did not "clearly and unambiguously show that the contract purchaser was without authority to bind the vessel for supplies and other necessaries furnished by material-men."

The evidence is convincing that the owner of the dredges was aware of the incurring of expenses for towing services, repairs and supplies both prior and subsequent to September 1, 1961. His conduct then estops him now from contending otherwise. For example, he was specifically informed by his long-time former employee, superintendent of the dredge RODDY O, that the dredge had dropped its boom in West Cote Blanche Bay rendering it inoperable and requiring emergency repairs which were made by Reagan and for which a libel is filed here by it. The dredge could not have operated again without these repairs and it is apparently in shipshape condition now to resume dredging operations as a result of the repairs furnished by Reagan. The same is true of the expensive ring gear furnished by intervenor, Baldwin-Lima-Hamilton. This new gear supplied a long felt desire of the dredge's owner that such a gear be provided for the dredge to operate efficiently. It is now part of the dredge's machinery and equipment and has helped to put it in condition to resume dredging operations. Under the evidence in this case claimant has failed to sustain the burden of proof and the court is compelled to hold that his claim and exceptive allegations are denied.

We conclude therefore that libelants and intervening libelants are entitled to judgment *in rem* against the respective dredges in the following amounts plus interest and costs: *RODDY O*, Reagan Tool Company, Inc. $11,269.36, Cenac Towing Company, Inc. $6,053.73, totaling $17,323.09; *J. E. JUMONVILLE*, Cenac Towing Company, Inc. $997.50, M. J. Franicevich Towing Company, Inc. $2,185.00, Baldwin-Lima-Hamilton Corporation $6,000.00, L. & L. Oil Company, Inc. $2,931.22, Lee & Leon Oil Company, Inc. $1,058.23, totaling $13,171.95.

With the exception of L. & L. Oil Company, Inc. and Lee & Leon Oil Company, Inc. who did not name H. H. Butts Dredging & Construction Company, Inc. in their intervening libel, all of the remaining libelants and intervening libelants are entitled to like judgments against H. H. Butts Dredging & Construction Company, Inc., *in personam*, by virtue of its confession of judgment in open court.

The owner's cross-libel for damages for the seizure is not supported by the evidence and is therefore dismissed.

Decree accordingly.