**INTERNATIONAL TERMINAL OPERATING CO., Inc., Libelant,**

v.

**S.S. VALMAS, her engines, boilers, etc., Respondent.**

No. 4795.

United States District Court
D. Maryland.

May 27, 1966.

Robert W. Williams, and Ober, Williams & Grimes, Baltimore, Md., for libelant.

Robert D. Klages, and Weinberg & Green, Baltimore, Md., for respondent.

WINTER, District Judge.

On undisputed facts, libelant and claimant each pray summary judgment.

Libelant is International Terminal Operating Co., Inc. (hereafter called "Stevedore"). The SS VALMAS is owned by Compagnie Naveria, claimant. During the events that are alleged to give rise to liability, the SS VALMAS was under time charter, dated June 23, 1964, to Alltransport, Inc. (hereafter called "Alltransport") which, in turn, placed her under subcharter, dated August 10, 1964, to Peter Russell, trading as Enterprise Marine Company (hereafter called "Enterprise"). Stevedore performed stevedoring services having a value of $25,959.00, on or about November 2, 1964, consisting of the discharge of inbound cargo at Chicago. It was stipulated that the SS VALMAS had a value of $28,000.00.

On arrival of the vessel in Chicago, Enterprise, the sub-charterer, was in control of the management of the vessel, and it made arrangements with Stevedore for discharge of the vessel. The time charter and the sub-charter were posted on the vessel and were part of the ship's papers and available for inspection at all times. At no time did Stevedore seek to inspect or make inquiry about these documents before performing stevedoring services.

46 U.S.C.A. § 971 gives any person furnishing necessaries to any vessel, upon the order of the owner or a person authorized by the owner, a maritime lien on the vessel which may be enforced by a suit in rem without the necessity of alleging or proving that credit was given to the vessel. By 46 U.S.C.A. § 972, the managing owner, ship's husband, master or any person to whom the management of the vessel at the port of supply is entrusted is presumed to have authority from the owner to procure necessaries for the vessel, and 46 U.S.C.A. § 973 provides that the owners and agents of a vessel specified in §

488

972 shall be taken to include officers and agents appointed by a charterer. Section 973 adds, however:

" * * * nothing in this chapter shall be construed to confer a lien when the furnisher knew, *or by the exercise of reasonable diligence could have ascertained,* that because of the terms of a charter party * * * the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." (emphasis supplied)

In the light of the provisions of §§ 971–975, and the undisputed fact that Stevedore could have examined the papers had it desired so to do, the question which must be decided is whether the terms and provisions of the time charter, or the sub-charter, or both, were legally sufficient to deprive Enterprise of authority to bind the SS VALMAS. If those documents are found to have that legal effect, Stevedore's failure to examine or inquire about them shows a lack of reasonable diligence, disentitling it to a lien. Dampskibsselskabet Dannebrog v. Signal Oil Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940). Of course, if the documents do not have this legal effect, Stevedore's failure to inquire is without legal significance. The Golden Gate, 52 F.2d 397 (9 Cir. 1931); The City of Helena, 25 F.Supp. 864 (D.Mo.1939); Gilmore and Black, The Law of Admiralty § 9–46, at 568 (1957). It is necessary, therefore, to turn to the terms and provisions of the two documents.

The time charter is dated June 23, 1964 by and between claimant (termed "Owners" in the document) and Alltransport (termed "Charterers" in the document). Compagnie Naveria purports to let and Alltransport to hire the SS VALMAS "for eleven (11) to thirteen (13) months time-charter three weeks more or less at charterers' option" with " * * * Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for the fulfillment of this Charter Party." Among the

many terms and conditions included in the Charter Party are the provisions of ¶ 18 which, so far as pertinent, provides:

"18. * * * Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them *or their agents,* which might have priority over the title and interest of the owners in the vessel." (emphasis supplied)

The sub-charter is dated August 10, 1964 by and between Alltransport (termed "Timechartered Owners" in the document) and Enterprise (termed "Charterers" in the document). It provided for inboard voyages from Antwerp and/or Bremen to the Great Lakes, including Chicago. The pertinent provision of the time charter relied on by the claimant to defeat Stevedore's lien is ¶ 17:

"17. Cargo is to be loaded, stowed, and discharged by the Charterers, free of risk and expense to the vessel."

The principal authority which must be considered is the *Signal Oil* case, supra. The case concerned a time charter wherein the charterer agreed to "provide and pay for" coal, fuel oil, port charges, etc. When the ship was libeled for nonpayment of a bill for fuel oil which had been supplied at the instance of the time charterer's agent, the question presented was whether the provision in the time charter to "provide and pay for" fuel oil negated the creation of a lien by the charterer. Deciding that its earlier decisions in The Kate, 164 U.S. 458, 17 S.Ct. 135, 41 L.Ed. 512 (1896) and The Valencia, 165 U.S. 264, 17 S.Ct. 323, 41 L.Ed. 710 (1897), which held a provision in a charter party to provide and pay for supplies, where knowledge of it is chargeable to the supplier, prevented the creation of a maritime lien, were superseded by the enactment of the Maritime Lien Act, Act of June 23, 1910, 46 U.S.C.A. §§ 971–975, the Court held that the language to "provide and pay for" fuel oil did not prevent the creation of a maritime lien. In reaching this conclusion the Court reaffirmed its previous decisions in The South Coast, 251 U.S. 519, 40 S.Ct. 233,

64 L.Ed. 386 (1919), which held that a lien could arise under a charter party wherein the charterer was required to provide and pay for supplies and the owner could retake the vessel in the event the charterer failed to discharge any lien within thirty days, and United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923), which held that no lien could arise under a charter party wherein the charterer agreed that it would "not suffer nor permit to be continued any lien, encumbrance, or charge which has or might have priority over the title and interest of the owner * * *." Specifically, in the *Signal Oil* case the Court was of the view that the charter party contained no provision prohibiting the creation of a maritime lien and, hence, the mere fact that the charterer was required to provide and pay for the supplies did not prevent a lien from attaching.

In the *Signal Oil* case a contention was made that the nature of the charter party whether a bare-boat charter, time charter, or otherwise, could make a difference in the authority of the charterer to create a lien. This contention was rejected, the Court saying:

"* * * Where as in this case, apart from mere navigation, the vessel is placed under the direction and control of the charterer as the hirer of the vessel, who as such may determine to what port she shall go and what she shall carry, subject only to specified exceptions, we think the charterer must be deemed to be intrusted with the vessel's management for the purpose of applying the statutory test of authority to obtain necessary supplies upon the credit of the vessel, in the absence of a provision to the contrary." (310 U.S. 279–280, 60 S.Ct. 943)

Following this statement, the Court commented on the fact that the origin of the maritime lien is the need of the ship and where a materialman does not know, and is not chargeable with knowledge, that there is a prohibition on the creation of a maritime lien in a charter party, the materialman is entitled to rely on the credit of the vessel and is protected by the lien action. Then the Court added in the penultimate paragraph of its opinion:

"We are of the opinion that it would thwart the purpose of the statute to compel the material-man furnishing supplies to the vessel to resolve the ambiguities which may be found in such charters as those here involved. The statute was intended to afford the material-man a reasonably certain criterion. The owner has a simple and ready means of protection. All that is necessary for him to do, as the material-man in dealing with the charterer is charged with notice of the charter, is to provide therein that the creation of maritime liens is prohibited. When the owner does not do so, he should not be heard to complain when it appears that it is the charterer's business to obtain supplies to keep the vessel on her way and the charter has not prohibited reliance upon the credit of the vessel." (310 U.S. 280–281, 60 S.Ct. 943)

To consider, first, the time charter in the light of the *Signal Oil* case and other authorities, it would appear that Stevedore, were it dealing with Alltransport, would have been chargeable with knowledge that Alltransport had no authority to permit the creation of a maritime lien. The language so forbidding Alltransport is identical with that held to have this effect in United States v. Carver, supra. This prohibition did not extend to Enterprise, however, because ¶ 18 of the time charter prohibits the charterers "or their agents" from permitting the creation of a lien, and it is conceded that Enterprise was not an agent of Alltransport. Thus, Alltransport was prohibited from creating liens under the time charter, but Enterprise was not. Any prohibition against Enterprise's creating a lien must be found in the sub-charter, if at all. This result is not inequitable vis-a-vis the owner since he could easily have extended the prohibition in the time charter to sub-charterers.

Stevedore argues that ¶ 17 of the sub-charter cannot have the effect of prohibiting the creation of a lien. The essence of Stevedore's argument is that ¶ 17 is a promise by Enterprise to pay and does not employ the word "lien," so that the sub-charter is ambiguous in meaning, and the ambiguity is to be construed in favor of the materialman in accordance with the statement in the *Signal Oil* case, supra, previously quoted. It is true that ¶ 17 does not employ the word "lien" and, hence, there is no prohibition against the creation of a lien as clearly expressed as that, for example, in Diaz v. The S.S. Seathunder, 191 F.Supp. 807 (D.Md.1961). But Stevedore's argument fails to give full effect to the phrase in ¶ 17, "free of risk and expense to the vessel." A maritime lien arises out of contract or tort. Gilmore and Black, The Law of Admiralty, supra, §§ 9–2, 9–37 and 9–38, at 481–482, 549–553. The lien claimed to exist in this case would arise out of contract. Since ¶ 17 of the sub-charter is specific that there shall be no expense to the vessel, it follows that the credit of the vessel may not be incurred, and it also follows that a lien may not arise. It matters not that ¶ 17 does not employ the word "lien" in the prohibition; the language employed could have no meaning other than a prohibition against the creation of a lien and hence, under the rule in the *Signal Oil* case, should be given that effect.

In an effort to escape the legal effect of the phrase "free of risk and expense to the vessel," contained in ¶ 17 of the sub-charter, Stevedore argues that when the sub-charter is read as an entirety, it appears that in other paragraphs the words "owners," "ship" and "vessel" are sometimes used interchangeably to refer to Alltransport as the time chartered owner and, hence, the phrase in question means only that cargo is to be loaded and unloaded free of expense to Alltransport. From a fair reading of the sub-charter, it appears that the words are not invariably used interchangeably, that "vessel," as used in ¶ 17, means the SS VALMAS, and that Stevedore's effort to avoid the plain meaning of ¶ 17 by ascribing another meaning to "vessel," results in a tortured construction of ¶ 17.

The Court concludes that ¶ 17, although not employing the word "lien," does constitute a prohibition against the creation of a lien for stevedoring services, that Stevedore is chargeable with knowledge of this paragraph, and that Stevedore does not have a maritime lien on the ship. On language identical to the sub-charter in the case at bar, a similar result was reached in Cooper Stevedoring of Louisiana, Inc. v. Alter Company, 230 F.Supp. 991 (E.D.La.1964), a case presently pending on appeal to the United States Court of Appeals for the Fifth Circuit.

The Clerk will enter an order granting claimant's motion for summary judgment.