James K. WALKER d/b/a Walker Brothers Boats, Plaintiff,

v.

BARGE IBL87, its Tackle, Apparel, Cables, Machinery, Anchors, Chains, Fittings, Tools, Pumps, Equipment and Supplies,

and

BARGE NL217, its Tackle, Apparel, Cables, Machinery, Anchors, Chains, Fittings, Tools, Pumps, Equipment and Supplies, Defendants,

and

Walsh Stevedoring Co., Inc., an Alabama Corporation, Claimant.

Civ. A. No. 3792.

United States District Court,
S. D. Mississippi, S. D.

July 28, 1970.

David A. Stewart, Jr., Pat Watts, Jr., Pascagoula, Miss., for plaintiff.

A. S. Johnston, III, Pascagoula, Miss., for defendants.

NIXON, District Judge.

MEMORANDUM OPINION

The libelant herein, James K. Walker, an adult resident citizen of Jackson County, Mississippi d/b/a Walker Brothers Boats, filed this Libel in Rem against Barges IBL87 and NL217, their tackle,

machinery, equipment, etc., asking that all persons claiming any right, title or interest unto these vessels be cited to appear and answer under oath all the matters alleged by the libelant, and that the vessels be condemned and sold to pay the amount allegedly due plaintiff with interest, costs and disbursements in this action, together with all other and further relief to which libelant is entitled. Pursuant to this libel, the defendant vessels were arrested and subsequently bonded to the claimant, Walsh Stevedoring Co., Inc., which has filed its answer and claim herein.

The basis for the libelant's claim for $8,076.72 is his alleged performance of services, pursuant to the claimed request of Walsh, whom he contends was the agent of the owners of the defendant barges, consisting of the towage of these barges by plaintiff's tugs on the Pascagoula River and the discharge of "fish-meal supplies and necessities" from the Motor Vessel "Stella Maris" which had partially sunk in the River in or near the Pascagoula, Mississippi harbor.

In its answer and claim made herein, the claimant Walsh admits that it is the agent for the defendant barges but denies each and every other allegation contained in the libel and further denies that libelant is entitled to any of the relief prayed for.

Libelant's action is based on the Merchant Marine Act, 1920, Sec. 30, Subsec. P, 41 Stat. 1005, 46 U.S.C.A. § 971:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Libelant further contends that Walsh was and is presumed to have authority from the owner of the defendant barges pursuant to 46 U.S.C.A. § 972, whereas the defendants and claimant contend that the libelant is not entitled to a maritime lien on either of the two vessels by virtue of Subsec. R of the above cited Merchant Marine Act, 46 U.S.C.A. § 973 and the "prohibition of liens" provision of the two Barge Charter Parties by which the defendant barges were chartered by their respective owners to the Charterer, Walsh Stevedoring Co., claimant herein. Although the libelant's proof would support a claim in excess of that stated in his libel, he nevertheless waives the amount allegedly due him over and above the amount claimed in his pleadings. Albeit, the Court has serious doubts concerning the applicability of U.S.C.A. § 971 to this case because of the nature of the performed services which constitute the basis of this action, since the defendants and claimant do not make any contention in this regard, and since determination of this question is not, in this Court's opinion, necessary to the disposition of this matter, the Court will not specifically concern itself with and decide this latter question, but rather will assume that the maritime lien provision of § 971 is herein applicable to the services performed by the libelant.

In part, 46 U.S.C.A. § 973 provides:

" * * * but nothing in this chapter shall be construed to confer a lien when the furnisher knew, *or by exercise of reasonable diligence could have ascertained,* that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." (Emphasis supplied)

The authorities are legion that the above emphasized phrase of Sec. 973 places an affirmative duty on one claiming a maritime lien pursuant to Sec. 971 to inquire and investigate as to the existence of a charter and its terms, and that if the party for whom the services are performed is, by the provisions of the Charter prohibited from permitting any lien or encumbrance to be imposed

on the vessel in question, no lien comes into existence under Sec. 971. The leading case on this point is United States v. Carver, 260 U.S. 482, 489, 43 S.Ct. 181, 182, 67 L.Ed. 361, in which Mr. Justice Holmes stated:

"We regard these words [of Section 973] as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms." *Accord* Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940); The South Coast, 251 U.S. 519, 40 S.Ct. 233, 64 L.Ed. 386 (1920). Gilmore and Black, Admiralty, 566 (1957) has interpreted *Carver* as holding that one claiming a lien, as here, is always charged with notice of the contents of a charter and has the burden of proving that he could not have discovered its terms if he had inquired, even though there is nothing to call his attention to the fact of the charter's existence and he may reasonably suppose that he is dealing with the owner, with the net result that lien claimants must always make inquiry regardless of whether or not they know facts which would lead them to think that the vessel was not owned by the company operating it. See Bimini Run, Ltd. v. Belcher Oil Co., 336 F.2d 184, 187 (C.A.5, 1964).

This Circuit has consistently followed *Carver*. In Tampa Ship Repair and Dry Dock Co. v. Esso Export Corp., 237 F.2d 506 (C.A.5, 1956), the Court stated:

"But when supplies have been furnished on the order of a charterer (or his ship master) ' * * * there is no question that the supplier is charged with knowledge of the provi-sions of the charter when he either knows them or by reasonable diligence could have ascertained them. * * * (and) When * * * the charter party, with knowledge of which the materialman is charged, prohibits the creation of a lien for supplies ordered by the charterer or * * * [his] representative, no lien will attach.' Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 273, 275, 60 S.Ct. 937, 940, 84 L.Ed. 1197, 1940 A.M.C. 647.''

To the same effect is Walsh Stevedoring Co. v. Slagen, 361 F.2d 478 (C.A.5, 1966); American Marine Corporation v. Towboat Z–Fourteen, 316 F.2d 238 (C.A.5, 1963) affng. 214 F.Supp. 849 (1962).

In the case sub judice, a Mr. Lacy with Van Osteen and Company, of New Orleans, Louisiana, general agent for the vessel "STELLA MARIS" contacted plaintiff by telephone some time shortly prior to July 1, 1969, requesting plaintiff's services in connection with the project undertaken and which gave rise to this action, and it was Lacy on behalf of Van Osteen who later authorized plaintiff to perform these services on the basis of rates quoted by plaintiff. Plaintiff began performance of the agreed work at the stipulated prices with the assistance of a sub-contractor, Bayou Casotte Construction Company, the entire operation being directly supervised by plaintiff's employee and tugboat Captain, Robert George Kelton.

Lacy discussed Van Osteen's desire to obtain the necessary barges to perform the work of unloading and disposing of "STELLA MARIS'" cargo with William D. Walsh, President of the claimant Alabama corporation, qualified to do business in the State of Mississippi, and requested Walsh's assistance in chartering three barges for this purpose inasmuch as Van Osteen was unsuccessful in this regard. Walsh was successful in obtaining the three barges for Van Osteen. Two of these barges were the defendant Barges, IBL87 and NL217, chartered by Walsh, on June 6, 1969, and June 7,

1969 from Aiple Towing Co., Inc., and Nilo Barge Line, Inc., their respective owners by executing Barge Charter Parties (the Court notes the discrepancy in the months of June reflected on the Barge Charter Parties and July referred to by the witnesses and is of the opinion that the Barge Charter Parties submitted in evidence as Exhibits D–1 and D–2, respectively, bear the incorrect date, that is, the month of June rather than the month of July, 1969). Paragraph 11 of the Charter Party or Agreement (Ex. D–1) with Aiple Towing Co. specifically prohibits the charterer from permitting any lien or encumbrance to be imposed on Barge IBL87 arising out of the charterer's use thereof. Likewise, paragraph 10 of the Barge Charter Plan or Agreement (Ex. D–2) between Nilo Barge Line, Inc., and Walsh contains an almost identical prohibition forbidding the imposition of any lien or encumbrance to be imposed on Barge NL217.

The Court finds that although Walsh's President discussed with the plaintiff the progress of the unloading, of the "STELLA MARIS", he specifically informed plaintiff that Walsh was not in any way responsible nor was it obligating itself for the payment for these services, but that plaintiff would have to look to Van Osteen. He further informed plaintiff that Walsh had merely chartered these barges for Van Osteen since plaintiff himself had the barges in his custody at the time they were chartered by Walsh for Van Osteen pursuant to the above Barge Charter Parties, and plaintiff knew that neither Walsh nor Van Osteen was the owner of these barges, and that Walsh had chartered them because the owners required Walsh to sign the agreement instead of Van Osteen. Walsh was reimbursed by Van Osteen for the amount paid the owners for the Charter of the two defendant barges. Walsh at no time has made any payment to plaintiff or anyone else in connection with the services performed by plaintiff. Van Osteen has paid plaintiff $7,000.00 of the claimed $15,076.72 for the complete unloading of Barge NL217 and the partial unloading of Barge IBL87 which was prevented from being fully unloaded by action of the City of Moss Point, Mississippi through criminal process because of the odor emanating from the fishmeal being unloaded within its corporate limits.

■ It is undisputed, and the Court finds that the plaintiff actually knew that Walsh was merely a charterer of the two defendant barges and that plaintiff did not make any inquiry whatsoever concerning the terms and provisions of the two Barge Charter Parties by which the two defendant barges were chartered to Walsh by their owners. Furthermore, neither Walsh nor anyone else attempted to withhold any information from plaintiff concerning the terms and provisions of the Charter Agreements and would have furnished this information to plaintiff upon his request.

■ Therefore, we have a Charter of the two defendant barges by Walsh which was on behalf of Van Osteen, which plaintiff was fully aware of, and these charters prohibited liens. Plaintiff made no inquiry whatsoever concerning the terms and provisions of the two Charter Agreements although he could by the exercise of reasonable diligence have ascertained that the two Charters prohibited the charterer from binding the vessels for the liens. Thus, there was a duty on the part of the plaintiff to exercise reasonable diligence which he completely failed and neglected to do. Plaintiff thus failed in this regard, just as did plaintiff in the *Carver* case in which Mr. Justice Holmes, the author of that opinion, stated:

"We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its

terms he was chargeable with notice of its terms. In this case it would seem that there would have been no difficulty on finding out both."

It can thus be seen that plaintiff, being fully aware of the charter, could very easily have ascertained the existence of the "prohibition of lien" clause in each of the Charter Agreements. This he failed to do, and thus, he failed to do at his own peril and has no lien upon the two defendant barges.

In this libel filed herein, plaintiff also contends that Walsh Stevedoring Co. was the agent of each of the defendant barge owners and as such is presumed to have authority from the owners within the meaning of 46 U.S.C.A. § 972. This contention is answered adversely to the libelant in Ocean Cargo Lines, Ltd. v. North Atlantic Marine Co., 227 F.Supp. 872 (U.S.D.C.S.D., N.Y.1964), in which the Court held that the construction of Charter Parties leads to the conclusion that the relationship between ship owner and charterer is that of owner-charterer and not principal-agent. The Court went on further to state on page 877:

> "Apparently, the maritime practice is that if an individual contracts to provide a vessel under a Charter Party, and intends to furnish a ship that he has chartered rather than his own, he is described in the subcharter Party as 'chartered owner', 'freight contractor', 'disponent' or, sometimes as 'agent or owner.' Scrutton Charter Parties 4, N.2 n. (t) (16th Ed., 1955). The voyage charter in the instant case conformative with such practice, describes the Charterer as 'agents for owners or disponent,' and addendums Nos. 1 and 2 to the voyage Charter referred to Charterer as 'Agents for Owners or Disponent Owners'. Moreover, there is no other evidence in the record indicating that Charterer had any authority to act as agent for Shipowner."

■ There is no evidence whatsoever in this record that Walsh was acting as agent for the owners of either of the defendant barges, and as a matter of fact, the plaintiff himself knew that Walsh Stevedoring was merely a Charterer of these vessels owned by others and in the actual custody of libelant at the time that they were chartered by Walsh from their owners. Thus, libelant's contention in this regard is completely refuted by the record herein.

Accordingly, after consideration of all the contentions of the parties, the Court finds that the libelant, who was aware of the Charter of the two defendant barges, failed to inquire concerning the terms and provisions of the Charter and that his inquiry would have certainly led to the discovery of the provisions therein denying the power or authority of the charterer to incur or permit to be imposed on either of the defendant vessels any liens whatsoever, and thus no lien was conferred upon him by reason of the services and work performed by him with the use of the defendant vessels. His libel will be dismissed at his costs. The claim of the claimant, Walsh Stevedoring Co., will be sustained.

The foregoing shall constitute Finding of Facts and Conclusions of Law of the Court and the defendants and claimants shall submit a decree in the form and within the time prescribed by the Rules of this Court.